[Civ. No. 11334.   Second Appellate District, Division One.—August 20, 1937.]

CHILDREN'S HOSPITAL SOCIETY OF LOS ANGELES (a Corporation) et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and SARAH BOULWARE, Respondents.

F. Britton McConnell for Petitioners.

Everett A. Corten, Arthur I. Townsend and Herlihy & Herlihy for Respondents.

DORAN, J.—This is a petition to review the findings and award made by the Industrial Accident Commission against petitioners, in favor of respondent Sarah Boulware.

After a hearing, the commission entered its findings, in substance to the effect that Sarah Boulware, the applicant, while employed as a graduate nurse on and prior to January 1, 1936, at Los Angeles, by the Children's Hospital, had sustained injury arising out of and occurring in the course of her employment, in that she had contracted poliomyelitis, or infantile paralysis; and said commission awarded her certain compensation therefor.

It is contended by petitioners herein, in part, that "the commission acted without and in excess of its jurisdiction" and that there was no substantial evidence to support the finding; that on the contrary the evidence showed, without conflict, that the cause and source of the disease are unknown.

The evidence shows that Miss Boulware worked as a nurse at the Children's Hospital from July 10, 1934, to January 1, 1936, with the exception of the month of September, 1935, when she was absent on vacation. Although her choice of residence was optional, she lived in the dormitory near the hospital with other nurses and hospital workers. The dormitory consisted of the two upper floors of a building located on the corner of Vermont Avenue and Sunset Boulevard, in Los Angeles, the lower floor of which was occupied by stores. She worked from 10:30 P. M. to 7:00 A. M., with one night "off-duty" each week. Her activities were otherwise unrestricted.

The evidence further shows that the Children's Hospital did not treat contagious diseases of any character; that during Miss Boulware's employment at the Children's Hospital she neither treated nor came in contact with any case of poliomyelitis, nor is there any evidence that she came in contact with any other nurses, doctors or hospital workers infected with the germs of such disease.

She testified, in substance, that she felt indisposed during the last three weeks of December; that about January 4th she consulted a physician who ordered her sent to the County Hospital. About January 5th her illness was diagnosed as poliomyelitis. She remained in the County Hospital in

quarantine until January 27, 1936, at which time she was released.

Dr. George Parrish, health officer of the city of Los Angeles, appeared as a witness before the commission and testified at the hearing in July, 1936, in part as follows, about an epidemic of poliomyelitis in Los Angeles: "I have made a very close study of the outbreak, all the way from 1934 to the present time. The majority of all the cases of 1934 and 1935, under my order, as far as possible, were sent to the General Hospital, where we could have supervision, and I could see it." He testified, in substance, that 200 nurses at the General Hospital in 1934 contracted the disease. The epidemic reoccurred at the General Hospital in 1935, at which time about 50 nurses contracted the disease, and it was Dr. Parrish's opinion that some of the nurses who had been afflicted in 1934 and had recovered may have been "carriers" for an indefinite period and were responsible for the "flare-up", as he termed it, in the hospital in 1935. He testified further, " . . . we don't know how many carriers there are, and there is no way of finding out who are the carriers; and we know that that means a great many abortive cases. You know, your Honor, only one case, 5 to 8, ever gets a paralysis at all, the other cases perhaps have only sniffles or cold, but they are poliomyelitis, and we have no way of knowing of these at all, we are perfectly helpless, up to the moment, of the control of this disease. . . . The average abortive case is one in which the symptoms are mild, and very short. So far as the individual knows, some little light cold, and disappeared in a day or two, and no further thought given to it. Unquestionably there are hundreds of those cases, who have a natural more or less immunity, and have no more than those few symptoms, and then they may run on indefinitely, spreading the disease to someone else." He testified further, in substance, that the contagious period of this disease is unknown. He also testified, for example, "We were so up in the air I brought the three outstanding men from Rockefeller Foundation here, Rockefeller paid the institution, sent them out here, and they worked through our health department, and they worked in every manner, but they themselves, up to the present moment haven't been able to determine the carriers, those still positive, and, in addition to that, we have Rosenau, from the Mayo's

out here, and he did considerable work, but no one is able to find out more than we know ourselves. They have immunization serums that promised much, but so far we haven't gained much headway.'' It was further established by Dr. Parrish's testimony that the recognized period of quarantine for this disease is three weeks.

It is further shown, and not disputed by petitioners, that the Children's Hospital, during the period just prior to December 31, 1935, was treating ten or fifteen post-poliomyelitis cases, that is, patients who had recovered but who continued to suffer from the paralysis which accompanies the affliction and remains as an after-effect. This treatment consisted of ''pool, physiotherapy, baking and massage treatments.'' But there is no evidence that these patients were carriers of the disease.

Thus it will be seen that the record clearly establishes two facts: First, that very little, if anything, is known about poliomyelitis; and, second, that to conclude from the evidence adduced at the hearing that the alleged injury arose out of the employment, would be pure speculation.

Under the heading, ''Position of the Commission'', respondent commission submits the following: ''The referee who heard the case and whose recommendations were confirmed by the commission discussed the case as follows: 'It seems to be more or less a question of fact as to whether or not there was any special exposure, or unusual exposure, to the disease; and each case appears to resolve itself upon its own merits. In this case, the writer believes that the law of averages would indicate that the disease was contracted at the hospital, for the following reasons: 1. There were two active cases in the hospital, one apparently for only a time of less than a day; 2. That there were, however, convalescent patients being treated, at the out-patient ward, by nurses who lived in the hospital under similar conditions with the claimant and with whom she must have had to come in more or less contact; 3. That the girl spent, according to her testimony, at least 90 per cent of her time at the hospital. On account of hours of work she very rarely went out, and then for only a short time. Under this set of facts, I believe there is a reasonable presumption that the disease was contracted at the hospital where work placed her, and that she is entitled to this presumption.' Respondent submits that the finding

as made in Miss Boulware's favor is undeniably supported by evidence of a most substantial character, as set forth above.''

■ Petitioners comment appropriately on the foregoing recommendations of the referee with the observation that ''It would, indeed, be a novel and disastrous principle if property rights could be divested on a gross assumption of 'the law of averages'.'' Moreover, it might be further observed that under the circumstances no presumption can serve as a substitute for a reasonable inference founded on substantial evidence.

The burden of proof was on the claimant for compensation. (Workmen's Compensation Act, section 19 [d]; Deering's Gen. Laws, Act 4749). An award of compensation may not be based upon surmise, conjecture or speculation. (*William Simpson Const. Co. v. Industrial Acc. Com.*, 74 Cal. App. 239 [240 Pac. 58].)

There was a total lack of evidence to support the finding and award.

For the foregoing reasons the award is annulled.

Houser, P. J., and York, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 18, 1937.