[No. S055679. Mar. 12, 1998.]

SHEILA LaTOURETTE, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and LONG BEACH
COMMUNITY COLLEGE DISTRICT, Respondents.

**COUNSEL**

Marotta & Ramos and Alfred E. Marotta for Petitioner.

William A. Herreras as Amicus Curiae on behalf of Petitioner.

Warren E. Kamm for Respondents.

**OPINION**

**MOSK, J.**—Decedent Elston LaTourette was on a business trip when he suffered a cardiac arrest caused by a preexisting medical condition and was hospitalized. After undergoing multiple heart surgeries, he died from complications, apparently caused by a bacterial infection contracted in the course of treatment. We address the question whether his estate is entitled to workers' compensation benefits. The answer is negative. The injury leading to death was noncompensable under Labor Code section 3600, which requires that an injury "aris[e] out of and in the course of the employment." Accordingly, we affirm the order of the Court of Appeal.

I.

Beginning in December 1979, decedent Elston LaTourette was employed as a supervising groundskeeper for the Long Beach Community College District, which is permissibly self-insured for workers' compensation liability. On October 21, 1990, while attending a conference on behalf of his employer in Reno, Nevada, he suffered cardiac arrest and was taken to a hospital. There he underwent several medical procedures, including heart bypass surgery and implantation of a defibrillator, to stabilize his condition and prevent further cardiac arrest. In the course of treatment, while still hospitalized in Reno, he developed a bacterial infection. On November 12, 1990, he died during emergency open heart surgery to correct an acute hemorrhage apparently caused by the infection.

In December 1990, decedent's widow, Sheila LaTourette (hereafter petitioner), filed a workers' compensation claim describing the injury as "heart-death . . . due [to] stress." In December 1991, she filed an application

before the Workers' Compensation Appeals Board, similarly alleging that decedent "suffered a heart attack due to stress while attending a convention for Long Beach City College." She sought, inter alia, compensation for temporary disability for the period between October 21, 1990, through November 12, 1990, the costs of medical treatment, burial expenses, and death benefits.

Trial was held in May 1995. It was undisputed that decedent suffered from a preexisting heart condition, including high blood pressure and cardiovascular disease. It was alleged that work conditions contributed to his cardiac arrest, including stress occasioned by extended work hours and overtime, problems with an unreliable assistant, heavy traffic on the regular drive to and from work, and, in connection with the business trip to Reno, denial of permission for him to use a college vehicle to drive to Reno or, after he opted to travel by airplane, to stay at a hotel the night before at the college's expense, and the consequent rush from the airport in Reno on the day of the conference. There was conflicting factual evidence on each of these points. There was also conflicting testimony by medical experts. One medical expert offered the opinion that "there was no connection between patient's stress at work and the ultimate cause of his death." Another medical expert offered the following opinion. "Certainly it is possible that he would have died when he did, as he did, even absent his . . . employment. But, hypothetically, based on the truth of what is told to me, and this is entirely from the widow as I don't see anything in the medical records that I have in this regard, it is medically probable that this accelerated the rate of acceleration of his arteriosclerosis over the years which would have required the need for bypass surgery and the defibrillator faster than it would have otherwise."

The workers' compensation judge found insufficient evidence of stress and concluded that decedent "did not sustain injury arising out of and occurring in the course of . . . employment to his heart resulting in death on November 12, 1990."

Petitioner sought reconsideration, alleging that she was entitled to workers' compensation benefits even if her husband's injury was not caused by work-related stress. "[W]hatever the cause of the cardiac arrest on October 21, 1990[,] the fact remains that the injury occurred while Mr. Latourette was a commercial traveler, and as such his acts in procuring medical care for the injury was [sic] a condition which arose out of his employment and in the course of his employment as a reasonable expectation of his needs while on the business trip. . . . Mr. Latourette died as a result of complications from the medical care he received while a Commercial Traveler."

The workers' compensation judge agreed that decedent was a "commercial traveler," but recommended denial on the ground that petitioner failed to

carry her burden of establishing that the death was "due to industrial causes": "The unfortunate fact that [decedent] died as a commercial traveler is not conclusive that the death was due to industrial causes, i.e., arose out of the employment." The Workers' Compensation Appeals Board denied the petition for reconsideration, adopting the recommendation and report of the workers' compensation judge.

Petitioner sought a writ of review in the Court of Appeal, which was summarily denied. We granted review and remanded with directions to vacate the denial and issue a writ of review. The Court of Appeal affirmed. It determined that decedent was acting within the course of his employment at the time of the cardiac arrest, but that there was no causal connection between the injury leading to his death and the employment. It rejected petitioner's argument that she was only required to establish that the need for treatment of the original injury was a reasonable expectation of a commercial traveler, characterizing it as an "attempt to superimpose strict liability analysis upon the commercial traveler rule." We granted review.

## II.

Labor Code section 3600, subdivision (a) states, in relevant part: "Liability for [workers' compensation benefits], in lieu of any other liability whatsoever to any person except as otherwise specifically provided . . . shall, without regard to negligence, exist against an employer for any injury sustained by his or her employees arising out of and in the course of the employment and for the death of any employee if the injury proximately causes death . . . [¶] . . . [¶] [w]here, at the time of the injury, the employee is performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment" (*id.*, subd. (a)(2)), and "[w]here the injury is proximately caused by the employment, either with or without negligence." (*Id.*, subd. (a)(3).)

■ The applicant for workers' compensation benefits has the burden of establishing the "reasonable probability of industrial causation." (*McAllister v. Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 408, 413 [71 Cal.Rptr. 697, 445 P.2d 313], fn. omitted; *Children's Hosp. Soc. v. Indus. Acc. Com.* (1937) 22 Cal.App.2d 365, 369 [71 P.2d 83].) The applicable standard of proof is "proof by a preponderance of the evidence." (Lab. Code, § 3202.5.)

■ We have previously summarized the requirements of Labor Code section 3600 as follows: "To be compensable, an injury must 'aris[e] out of and [be] in the course of the employment.' (Lab. Code, § 3600.) This two-pronged requirement is the cornerstone of the workers' compensation system. [Citation.] In applying it, this court must be guided by the equally

fundamental principle that the requirement is to be liberally construed *in favor of awarding benefits.*" (*Maher* v. *Workers' Comp. Appeals Bd.* (1983) 33 Cal.3d 729, 732-733 [190 Cal.Rptr. 904, 661 P.2d 1058], fn. omitted, original italics.)

"The requirement of Labor Code section 3600 is twofold. On the one hand, the injury must occur 'in the course of the employment.' This concept 'ordinarily refers to the time, place, and circumstances under which the injury occurs.' [Citation.] Thus ' "[a]n employee is in the 'course of his employment' when he does those reasonable things which his contract with his employment expressly or impliedly permits him to do." ' [Citation.] And, ipso facto, an employee acts within the course of his employment when ' "performing a duty imposed upon him by his employer and one necessary to perform before the terms of the contract [are] mutually satisfied." ' " (*Maher* v. *Workers' Comp. Appeals Bd.*, *supra*, 33 Cal.3d at p. 733.)

"On the other hand, the statute requires that an injury 'arise out of' the employment . . . . It has long been settled that for an injury to 'arise out of the employment' it must 'occur by reason of a condition or incident of [the] employment. . . .' [Citation.] ▆▆▆ ■■ That is, the employment and the injury must be linked in some causal fashion." (*Maher* v. *Workers' Comp. Appeals Bd.*, *supra*, 33 Cal.3d at pp. 733-734.)[1]

▆ In *Pacific Indem. Co.*, we stated that "[t]he mere fact that an employee is performing a personal act when injured does not *per se* bring him without the purview of the compensation law." (*Pacific Indem. Co.* v. *Ind. Acc. Com.* (1945) 26 Cal.2d 509, 513 [159 P.2d 625].) There we stated the test for when an injury arises out of the employment as follows. " 'If the particular act is reasonably contemplated by the employment, injuries received while performing it arise out of the employment, and are compensable. In determining whether a particular act is reasonably contemplated by the employment the nature of the act, the nature of the employment, the custom and usage of a particular employment, the terms of the contract of employment, and perhaps other factors should be considered. Any reasonable doubt as to whether the act is contemplated by the employment, in view of this state's policy of liberal construction in favor of the employee, should

---

[1]As we noted in *Maher*, although Labor Code section 3600 refers to "proximate cause," its definition in workers' compensation cases is not identical to that found in the common law of torts. (*Maher* v. *Workers' Comp. Appeals Bd.*, *supra*, 33 Cal.3d at p. 734, fn. 3.) "In fact, the proximate cause requirement of Labor Code section 3600 has been interpreted as merely elaborating on the general requirement that the injury arise out of the employment." (*Ibid.*) The danger from which the employee's injury results must be one to which he was exposed in his employment. (*Ibid.*) " 'All that is required is that the employment be one of the contributing causes without which the injury would not have occurred.' " (*Ibid.*)

be resolved in favor of the employee.' " (*Id.* at p. 514.) We held that the deaths of employee grape pickers by drowning in the employer's irrigation reservoir while washing after work "arose out of" their employment because using the reservoir for cleansing purposes was inferably an incident of employment. (*Id.* at pp. 516-517.)

■ When an employee engages in a special activity that is within the course of employment, an injury suffered during the activity or while traveling to and from the place of such activity also arises out of the employment. Thus, we have held that an employee's death as the result of an automobile accident that occurred while he was returning home from educational activities undertaken at the invitation of his employer was compensable. (*Dimmig* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 860, 868 [101 Cal.Rptr. 105, 495 P.2d 433].)

■ Similarly, under the "commercial traveler" rule, we held in *Wiseman* v. *Industrial Acc. Com.* (1956) 46 Cal.2d 570, 572 [297 P.2d 649], that an employee traveling on the employer's business is regarded as acting within the course of employment during the entire period of his travel. " 'His acts in traveling, procuring food and shelter are all incidents of the employment, and where injuries are sustained during the course of such activities, the Workmen's Compensation Act applies.' " (*Ibid.*) In the case of a commercial traveler, workers' compensation coverage applies to the travel itself and also to other aspects of the trip reasonably necessary for the sustenance, comfort, and safety of the employee. (1 Herlick, Cal. Workers' Compensation Law (5th ed. 1994) § 10.18, p. 10-33.) It does not, however, apply to any and all activities. "Personal activity not contemplated by the employer may constitute a material departure from the course of employment." (*Ibid.*)

In *Wiseman*, the employee, a commercial traveler, died from asphyxiation and burns in his hotel room. We held that the death arose out of the employment because he occupied the room "as a necessary incident of his employment." (*Wiseman* v. *Industrial Acc. Com.*, *supra*, 46 Cal.2d at p. 573; see also *California C.I. Exch.* v. *Indus. Acc. Com.* (1936) 5 Cal.2d 185, 186 [53 P.2d 758] [death of commercial traveler from asphyxiation in a cabin on return from a sales trip was compensable]; *State Emp. etc. System* v. *Ind. Acc. Com.* (1950) 97 Cal.App.2d 380, 384 [217 P.2d 992] [death from asphyxiation of employee while asleep in his vehicle was compensable].) Similarly, in *Leonard Van Stelle, Inc.* v. *Industrial Acc. Com.* (1963) 59 Cal.2d 836, 837 [31 Cal.Rptr. 467, 382 P.2d 587], we held that injuries suffered by a commercial traveler in an automobile accident while seeking dinner on her return journey "occurred within the statutory definition of the scope of her employment." (See also *IBM Corp.* v. *Workers' Comp. Appeals Bd.* (1978) 77

Cal.App.3d 279, 280-281 [142 Cal.Rptr. 543] [death of the employee in an automobile accident while returning to a 10-day training program from a weekend visit to relatives was compensable].)

As indicated, the scope of the commercial traveler rule, though broad, is not unlimited; the activity at the time of injury or death must bear some relation to the purposes of the employment. (1 Herlick, Cal. Workers' Compensation Law, *supra*, § 10.18, p. 10-33.) As the Court of Appeal explained in *Dalgleish* v. *Holt* (1952) 108 Cal.App.2d 561, 566 [237 P.2d 553]: "[T]his rule does not embrace all activities of a commercial traveler irrespective of their connection with the purposes of the employment. The conditions essential to compensation as set forth in section 3600 of the Labor Code apply equally to traveling employees; the status of an employee as a traveling salesman does not change a course of action which is not within the scope of the employment to one that is." An injury is not compensable if the employee's activities "amounted to a purely personal undertaking." (*Ibid.*; see also *Western Airlines* v. *Workers' Comp. Appeals Bd.* (1984) 155 Cal.App.3d 366, 369 [202 Cal.Rptr. 74] [rape of an airline flight attendant during 26-hour layover between flights was noncompensable]; 1 Hanna, Cal. Law of Employee Injuries & Workers' Compensation (rev. 2d ed. 1997) Injury and Employment, § 4.117[2], p. 4-133 ["All activities of a commercial traveler . . . are not within the course of employment. . . . The focus is on the nature of the activity rather than the status of the employee."].)

It follows that commercial travelers are also subject to the general rules governing injury from a nonoccupational disease. ▓ As a general rule such injury does not arise out of the employment and is noncompensable. (1 Hanna, Cal. Law of Employee Injuries & Workers' Compensation, *supra*, Injury and Employment, § 4.81[4], p. 4-108 [defining a nonoccupational disease as "one that is not contracted solely because of an exposure at work or because it is related to a particular type of work"]; see *Johnson* v. *Industrial Acc. Com.* (1958) 157 Cal.App.2d 838, 840 [321 P.2d 856] [" 'An ailment does not become an occupational disease simply because it is contracted on the employer's premises. It must be one which is commonly regarded as natural to, inhering in, an incident and concomitant of, the work in question.' "].)

The general rule governing injury from nonoccupational disease thus differs markedly from that governing physical injury from a condition of the employment that places the employee in a position of danger. Under the broad "positional risk" theory applicable to physical injuries in the workplace, e.g., cuts from flying glass, injury from a fall, "[i]t is sufficient if the work brings the employee within the range of peril by requiring his or her

presence there when it strikes, and the employee need only establish that the employment placed him or her within the range of danger by requiring him or her to be 'in the precincts' of the employer's premises 'at the time the peril struck.'" (1 Hanna, Cal. Law of Employee Injuries & Workers' Compensation, *supra*, Injury and Employment, § 4.41, p. 4-58, fns. omitted.) By contrast, in the area of nonoccupational disease, "[t]he fact that an employee contracts a disease while employed or becomes disabled from the natural progress of a nonindustrial disease during employment will not establish the causal connection." (*Id.* at § 4.71, pp. 4-105 to 4-106.) The narrower rule applicable to infectious diseases arises from the obvious problems of determining causation when the source of injury is of uncertain etiology, the product of invisible and often widespread viral, bacterial, or other pathological organisms. The potentially high costs of avoidance and treatment for infectious diseases, coupled with the fact that such illnesses often cannot be shown with certainty to have resulted from exposure in the workplace, also explain the different line-drawing by our courts in the area of nonoccupational disease.

There are two principal exceptions to the general rule of noncompensability for nonoccupational disease, or treatment therefor. "First, if the employment subjects the employee to an increased risk compared to that of the general public, the injury is compensable. Second, if the immediate cause of the injury is an intervening human agency or instrumentality of the employment, the injury is compensable." (1 Hanna, Cal. Law of Employee Injuries & Workers' Compensation, *supra*, Injury and Employment, § 4.80[2], p. 4-106.1.)

*Pac. Emp. Ins. Co.* v. *Ind. Acc. Com.* (1942) 19 Cal.2d 622 [122 P.2d 570, 141 A.L.R. 798] illustrates the first exception to the general rule that injury from a nonoccupational disease does not arise out of employment—i.e., that the employment subjects the employee to an increased risk compared to that of the general public. In *Pac. Emp. Ins. Co.*, we affirmed an award of compensation to a traveling salesman who was found to have contracted San Joaquin Valley fever—a respiratory illness caused by a mold or fungus found in the soil in the San Joaquin Valley and Arizona—during his business trips to those areas. We emphasized that it was "reasonable to conclude that if [the employee's] duties had not taken him to the endemic area he would not have contracted the disease. It was by reason of and incident to his employment that he came in contact with the infection. The risk to which he was subjected by his employment was not the same as that of the public in the endemic area inasmuch as the great majority of the inhabitants there possessed an immunity to the disease which [the employee], living outside the area, lacked." (*Id.* at p. 630; see also *Warner* v. *Industrial Acc. Com.*

(1935) 10 Cal.App.2d 375, 376 [51 P.2d 897] ["It is well established that to permit a recovery [for death from pneumonia] the employee must have been subjected by his employment to a special exposure which was beyond that to which the commonalty is subjected."].)

*Maher v. Workers' Comp. Appeals Bd., supra*, 33 Cal.3d 729, illustrates the second exception to the general rule that injury from a nonoccupational disease does not "arise out of employment"—i.e., that the immediate cause of the injury is an intervening human agency or instrumentality of the employment. In *Maher*, a nurse's assistant was required by her employer to undergo a physical examination that included a test for tuberculosis. When she tested positive for the disease, she was required to undergo treatment for tuberculosis as a condition of continued employment. She developed a significant adverse reaction to the treatment. We held that *employer-required* medical treatment for a nonoccupational disease arises out of the employment and is compensable. (*Id.* at p. 738; see also *Roberts* v. *U.S.O. Camp Shows, Inc.* (1949) 91 Cal.App.2d 884, 885 [205 P.2d 1116] [" 'Incapacity caused by illness from vaccination or inoculation may properly be found to have arisen out of the employment where such treatment is submitted to pursuant to the direction or for the benefit of the employer.' "].)

### III.

Applying the foregoing principles to the present matter, we conclude that the injury is noncompensable. Although the parties did not dispute that the cardiac arrest occurred "in the course of the employment," petitioner failed to carry her burden of establishing that the injury from the bacterial infection that apparently resulted in death also occurred "in the course of employment" or that it "arose out of the employment."

Petitioner does not contest the finding of the Workers' Compensation Appeals Board that decedent sought treatment in Reno for a preexisting nonoccupational medical condition. Indeed, she concedes that "had the decedent recovered from the treatment, without further injury, he would not have been able to receive worker's [*sic*] compensation benefits." She also does not dispute that she would not have been entitled to benefits if decedent had received treatment, with the same outcome, in his own local hospital. Rather, she argues that merely because he sought treatment during a business trip, any secondary injury therefrom must be deemed to "arise out of the employment."

The claim is lacking in merit. Decedent's fatal injury, from the bacterial infection he contracted in a Reno hospital, did not occur in the course of employment or by reason of a condition or an incident of the employment.

Not surprisingly, petitioner concedes that she has found no authority in support of her assertion that obtaining medical treatment for a nonoccupational disease is a "reasonable expectation of the commercial traveler's needs." There is none. We decline to craft such a rule that would apply to these circumstances. Unlike securing food and lodgings or traveling by automobile, which involve the ordinary incidents of a traveler's life on the road, undergoing major heart surgery for a preexisting condition is not a course of action by a "commercial traveler" that can fairly be said to occur "in the course of employment." The risks at issue here were not ones to which an average healthy traveler would be exposed, but instead arose out of, or flowed from, the employee's heart condition, which was itself nonindustrial. The course of medical treatment was "a purely personal undertaking," outside the scope of the employment. (*Dalgleish* v. *Holt, supra*, 108 Cal.App.2d at p. 566.) Moreover, it would appear that the infection was contracted *after* the seminar in Reno had concluded and decedent's business trip should have ended. Petitioner cannot credibly claim that decedent was still a commercial traveler during a time beyond the contemplated end of his commercial journey, when he was forced to remain in Reno because of a strictly personal emergency.

Nor, in any event, did the injury fall within either of the two exceptions to the general rule that injuries due to a nonoccupational disease, or treatment therefor, are noncompensable because they do not "arise out of the employment." Thus, petitioner does not establish that decedent was exposed to a special risk of infection or other medical injury because of his employment. She merely argues that it is *possible* that the risk of infection from surgery was greater in Reno. "An award of compensation may not be based upon surmise, conjecture or speculation." (*Children's Hosp. Soc.* v. *Indus. Acc. Com., supra*, 22 Cal.App.2d at p. 369.) The burden of proof on this point was hers, requiring proof of the *probability* that decedent was exposed to a special risk. (Lab. Code, § 3202.5.)[2]

The Court of Appeal correctly concluded that petitioner failed to carry her burden: "Our decision might be otherwise had decedent's travel required him to be in a geographic area that could not provide reasonable medical care to a cardiac patient. However, petitioner has provided no evidence to show that medical treatment in Reno for cardiac patients is patently substandard to that offered in Los Angeles."

Nor does petitioner establish that the immediate cause of the injury was an intervening human agency or instrumentality of the employment. Unlike the

[2]At oral argument, plaintiff's counsel conceded that there was no evidence that the risk of bacterial infection was greater in Reno.

situation in *Maher*, the employer in this matter apparently did not require or authorize the treatment for decedent. As petitioner concedes, although it was sought during a business trip, the treatment was not a condition of employment imposed by the employer; rather, it was self-directed.

## IV.

For the foregoing reasons, the judgment of the Court of Appeal is affirmed.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.

Petitioner's application for a rehearing was denied April 22, 1998.