(Slip Opinion) OCTOBER TERM, 2011 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## PACIFIC OPERATORS OFFSHORE, LLP, ET AL. *v.* VALLADOLID ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 10–507. Argued October 11, 2011—Decided January 11, 2012

Petitioner Pacific Operators Offshore, LLP (Pacific), operates two drilling platforms on the Outer Continental Shelf (OCS) off the California coast and an onshore oil and gas processing facility. Employee Juan Valladolid spent 98 percent of his time working on an offshore platform, but he was killed in an accident while working at the onshore facility. His widow, a respondent here, sought benefits under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U. S. C. §901 *et seq.*, pursuant to the Outer Continental Shelf Lands Act (OCSLA), which extends LHWCA coverage to injuries "occurring as the result of operations conducted on the [OCS]" for the purpose of extracting natural resources from the shelf, 43 U. S. C. §1333(b). The Administrative Law Judge dismissed her claim, reasoning that §1333(b) did not cover Valladolid's fatal injury because his accident occurred on land, not on the OCS. The Labor Department's Benefits Review Board affirmed, but the Ninth Circuit reversed. Rejecting tests used by the Third and the Fifth Circuits, the Ninth Circuit concluded that a claimant seeking benefits under the OCSLA "must establish a substantial nexus between the injury and extractive operations on the shelf."

*Held:* The OCSLA extends coverage to an employee who can establish a substantial nexus between his injury and his employer's extractive operations on the OCS. Pp. 3–14.

(a) The Courts of Appeals have offered competing interpretations of §1333(b)'s scope. According to the Third Circuit, because Congress intended LHWCA coverage to be expansive, §1333(b) extends to all injuries that would not have occurred "but for" operations on the OCS. Thus, an employee who worked on a semisubmersible drill rig,

but who died in a car accident on his way to board a helicopter to be flown to the rig, was eligible for benefits because he would not have been injured but for his traveling to the rig. In contrast, the Fifth Circuit has concluded that Congress intended to establish "a bright-line geographic boundary," extending §1333(b) coverage only to employees whose injuries or death occurred on an OCS platform or the waters above the OCS. Under its "situs-of-injury" test, a welder injured on land while constructing an offshore oil platform was ineligible for §1333(b) benefits. In the decision below, the Ninth Circuit held that §1333(b) extends coverage to injured workers who can establish a "substantial nexus" between their injury and extractive operations on the OCS. The Solicitor General offers a fourth interpretation, which would provide coverage for off-OCS injuries only to those employees whose duties contribute to operations on the OCS and who perform work on the OCS itself that is substantial in both duration and nature. Pp. 3–6.

(b) Contrary to Pacific's position, the Fifth Circuit's "situs-of-injury" test is not the best interpretation of §1333(b). Pp. 6–12.

(1) Nothing in the text of §1333(b) suggests that an injury must occur on the OCS. The provision has only two requirements: The extractive operations must be "conducted on the [OCS]," and the employee's injury must occur "as the result of" those operations. If, as Pacific suggests, the purpose of §1333(b) was to geographically limit the scope of OCSLA coverage to injuries that occur on the OCS, Congress could easily have achieved that goal by omitting from §1333(b) the words "as the result of operations conducted." Moreover, Congress' decision to specify situs limitations in other subsections, but not in §1333(b), indicates that it did not intend to so limit §1333(b). This conclusion is not foreclosed by *Herb's Welding, Inc.* v. *Gray*, 470 U. S. 414, or *Offshore Logistics, Inc.* v. *Tallentire*, 477 U. S. 207, neither of which held that §1333(b) coverage was limited to on-OCS injuries. Section 1333(b)'s text also gives no indication that Congress intended to exclude OCS workers who are eligible for state benefits from LHWCA coverage. To the contrary, the LHWCA scheme incorporated by the OCSLA explicitly anticipates that injured employees might be eligible for both state and federal benefits. Pp. 6–10.

(2) Also unpersuasive is Pacific's alternative argument that §1333(b) imports the LHWCA's strict situs-of-injury requirement, which provides benefits only for injuries occurring "upon the navigable waters" of the United States, 33 U. S. C. §903(a). It is unlikely that Congress intended to restrict the scope of the OCSLA workers' compensation scheme through a nonintuitive and convoluted combination of two separate legislative Acts. In addition, under Pacific's alternative theory, LHWCA coverage would not be extended to the

navigable waters above the shelf. Thus, even employees on a crew ship immediately adjacent to an OCS platform who are injured in a platform explosion would be excluded from §1333(b) coverage. That view cannot be squared with §1333(b)'s language. Pp. 11–12.

(3) Pacific's policy concerns also cannot justify an interpretation of §1333(b) that is inconsistent with the OCSLA's text. P. 12.

(c) Neither the Solicitor General's status-based inquiry nor the Third Circuit's "but for" test are compatible with §1333(b). The Solicitor General's inquiry has no basis in the OCSLA's text, because §1333(b)'s "occurring as the result of operations" language plainly suggests causation. And when taken to its logical conclusion, the Third Circuit's test, though nominally based on causation, is essentially a status-based inquiry because it would extend coverage to all employees of a business engaged in extracting natural resources from the OCS, no matter where those employees work or what they are doing at the time of injury. Because LHWCA coverage was extended only to injuries "occurring as the result of operations conducted on the [OCS]," §1333(b)'s focus should be on injuries resulting from those "operations." Pp. 12–14.

(d) The Ninth Circuit's "substantial-nexus" test is more faithful to §1333(b)'s text. This Court understands that test to require the injured employee to establish a significant causal link between his injury and his employer's on-OCS extractive operations. The test may not be the easiest to administer, but Administrative Law Judges and courts should be able to determine if an injured employee has established the required significant causal link. Whether an employee injured while performing an off-OCS task qualifies will depend on the circumstances of each case. It was thus proper for the Ninth Circuit to remand this case for the Benefits Review Board to apply the "substantial-nexus" test. P. 14.

604 F. 3d 1126, affirmed and remanded.

THOMAS, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KENNEDY, GINSBURG, BREYER, SOTOMAYOR, and KAGAN, JJ., joined. SCALIA, J., filed an opinion concurring in part and concurring in the judgment, in which ALITO, J., joined.

NOTICE:  This opinion is subject to formal revision before publication in the preliminary print of the United States Reports.  Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 10–507

PACIFIC OPERATORS OFFSHORE, LLP, ET AL., PETITIONERS *v.* LUISA L. VALLADOLID ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[January 11, 2012]

JUSTICE THOMAS delivered the opinion of the Court.

The Outer Continental Shelf Lands Act (OCSLA) extends the federal workers' compensation scheme established in the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U. S. C. §901 *et seq.*, to injuries "occurring as the result of operations conducted on the outer Continental Shelf" for the purpose of extracting natural resources from the shelf.  43 U. S. C. §1333(b).  The United States Court of Appeals for the Ninth Circuit determined that the OCSLA extends coverage to an employee who can establish a substantial nexus between his injury and his employer's extractive operations on the Outer Continental Shelf.  We affirm.

I

Petitioner Pacific Operators Offshore, LLP (Pacific), operates two drilling platforms on the Outer Continental Shelf off the coast of California and an onshore oil and gas processing facility in Ventura County, California.  Pacific employed Juan Valladolid as a general manual laborer—known in the trade as a roustabout—in its oil exploration

and extraction business.  Valladolid spent about 98 percent of his time on one of Pacific's offshore drilling platforms performing maintenance duties, such as picking up litter, emptying trashcans, washing decks, painting, maintaining equipment, and helping to load and unload the platform crane.  Valladolid spent the remainder of his time working at Pacific's onshore processing facility, where he also performed maintenance duties, including painting, sandblasting, pulling weeds, cleaning drain culverts, and operating a forklift.

While on duty at the onshore facility, Valladolid died in a forklift accident.  His widow, a respondent here, filed a claim for benefits under the LHWCA pursuant to the extension of that Act contained within the OCSLA.  The OCSLA provides, in relevant part:

> "With respect to disability or death of an employee resulting from any injury occurring as the result of operations conducted on the outer Continental Shelf for the purpose of exploring for, developing, removing, or transporting by pipeline the natural resources, or involving rights to the natural resources, of the subsoil and seabed of the outer Continental Shelf, compensation shall be payable under the provisions of the [LHWCA]."  43 U. S. C. §1333(b).

After a hearing, an Administrative Law Judge (ALJ) dismissed respondent's claim.  The ALJ reasoned that Valladolid's fatal injury was not covered under §1333(b) because his accident occurred on land, rather than on the Outer Continental Shelf.  On appeal, the United States Department of Labor's Benefits Review Board affirmed, concluding that Congress intended to limit the coverage provided by the OCSLA to injuries suffered by employees within the "geographical locale" of the Outer Continental Shelf. *L. V.* v. *Pacific Operations Offshore, LLP,* 42 BRBS 67, 71 (2008) *(per curiam).*

The Ninth Circuit reversed, holding that §1333(b) neither contains a "situs-of-injury" requirement, as the Fifth Circuit has held, nor imposes a "but for" causation requirement, as the Third Circuit has held. See 604 F. 3d 1126, 1130–1140 (2010) (rejecting the holdings of *Mills* v. *Director, Office of Workers' Compensation Programs*, 877 F. 2d 356 (CA5 1989) (en banc); *Curtis* v. *Schlumberger Offshore Service, Inc.*, 849 F. 2d 805 (CA3 1988)). Instead, the Ninth Circuit concluded that "the claimant must establish a substantial nexus between the injury and extractive operations on the shelf" to qualify for workers' compensation benefits under the OCSLA. 604 F. 3d, at 1139. We granted Pacific's petition for a writ of certiorari to resolve this conflict. 562 U. S. \_\_\_ (2011).

## II

In 1953, Congress enacted the Submerged Lands Act, 67 Stat. 29, 43 U. S. C. §1301 *et seq.*, which extended the boundaries of Coastal States three geographic miles into the Atlantic and Pacific Oceans and three marine leagues into the Gulf of Mexico. At the same time, Congress enacted the OCSLA, affirming the Federal Government's authority and control over the "outer Continental Shelf," defined as the submerged lands subject to the jurisdiction and control of the United States lying seaward and outside of the submerged lands within the extended State boundaries. 67 Stat. 462, 43 U. S. C. §§1331(a), 1332(1). As defined by the OCSLA, the Outer Continental Shelf includes the "submerged lands" beyond the extended state boundaries, §1331(a), but not the waters above those submerged lands or artificial islands or installations attached to the seabed. For simplicity's sake, we refer to the entire geographical zone as the "OCS."

Section 1333 extends various provisions of state and federal law to certain aspects of the OCS. For example, §1333(a)(1) extends the Constitution and federal laws of

civil and political jurisdiction "to the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed," for the purpose of extracting its natural resources.   Section 1333(a)(2)(A) makes the civil and criminal laws of each adjacent State applicable to "that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf."   Section 1333(b), the provision involved in this case, makes LHWCA workers' compensation benefits available for the "disability or death of an employee resulting from any injury occurring as the result of operations conducted on the outer Continental Shelf" for the purpose of extracting its natural resources.

   The question before us is the scope of coverage under §1333(b).   The parties agree that §1333(b) covers employees, such as oil rig and drilling platform workers, who are injured while working directly on the OCS to extract its natural resources.   They disagree, however, whether employees who are involved in extraction operations but who are injured beyond the OCS are also covered under the OCSLA.   This dispute focuses on the meaning of the phrase "any injury occurring as the result of operations conducted on the outer Continental Shelf" in §1333(b).

   The Courts of Appeals have offered competing interpretations.   In *Curtis* v. *Schlumberger Offshore Service, Inc.*, 849 F. 2d*,* at 811, the Third Circuit held that, because Congress intended LHWCA coverage to be expansive, §1333(b) extends to all injuries that would not have occurred "but for" operations on the OCS.   The Third Circuit thus concluded that an employee who worked on a semisubmersible drill rig, but who was killed in a car accident on the way to the helicopter that was to fly him to that rig,

was eligible for §1333(b) benefits. *Id.,* at 806, 811. As the Third Circuit summarized, "'But for' [Curtis'] travelling to [his drill rig] for the purpose of conducting 'operations' within §1333(b), employee Curtis would not have sustained injuries in the automobile accident." *Id.,* at 811.

In *Mills* v. *Director, supra,* the Fifth Circuit, sitting en banc, adopted a narrower interpretation of §1333(b). The court concluded that Congress intended to establish "a bright-line geographic boundary for §1333(b) coverage," and held that §1333(b) extends coverage only to employees engaged in OCS extractive activities who "suffer injury or death on an OCS platform or the waters above the OCS." *Id.,* at 362. Applying its "situs-of-injury" test, the Fifth Circuit held that a welder who was injured on land during the construction of an offshore oil platform was not eligible for §1333(b) benefits. *Id.,* at 357, 362.

In the case below, the Ninth Circuit rejected the Fifth Circuit's "situs-of-injury" requirement as unsupported by the text of §1333(b), and the Third Circuit's "but for" test as too broad to be consistent with Congress' intent. 604 F. 3d, at 1137, 1139. Instead, the Ninth Circuit adopted a third interpretation of §1333(b), holding that a "claimant must establish a substantial nexus between the injury and extractive operations on the shelf" to be eligible for §1333(b) benefits. *Id.,* at 1139. "To meet the standard," the Ninth Circuit explained, "the claimant must show that the work performed directly furthers outer continental shelf operations and is in the regular course of such operations." *Ibid.*

The Solicitor General suggests yet a fourth interpretation of §1333(b).[1] This interpretation would extend cover-

———————

[1] The Director, Office of Workers' Compensation Programs, United States Department of Labor, is a respondent in this case because the Director administers the OCSLA workers' compensation scheme established by §1333(b).

age to two categories of injuries: (1) all on-OCS injuries suffered by employees of companies engaged in resource extraction on the OCS; and (2) the off-OCS injuries of those employees who spend a substantial portion of their worktime on the OCS engaging in extractive operations. Brief for Federal Respondent 32–33. According to the Solicitor General, this test would provide §1333(b) coverage for off-OCS injuries only to those employees whose duties contribute to operations on the OCS and who perform work on the OCS itself that is substantial in both duration and nature. *Id.,* at 35.

### III

Pacific argues that the Fifth Circuit's "situs-of-injury" test presents the best interpretation of §1333(b). The crux of Pacific's argument is that off-OCS injuries cannot be "the result of operations conducted on the outer Continental Shelf" for purposes of §1333(b). Pacific asserts that because Valladolid was injured on dry land, his death did not occur as the result of extraction operations conducted on the OCS, and therefore respondent is ineligible for LHWCA workers' compensation benefits. We disagree.

### A

The OCSLA extends the provisions of the LHWCA to the "disability or death of an employee resulting from any injury occurring as the result of operations conducted on the outer Continental Shelf." §1333(b). Contrary to the view of Pacific and the Fifth Circuit, nothing in that language suggests that the injury to the employee must occur on the OCS. Section 1333(b) states only two requirements: The extractive operations must be "conducted on the outer Continental Shelf," and the employee's injury must occur "as the result of" those operations.

Despite the lack of a textual "situs-of-injury" requirement in §1333(b), Pacific argues that it is logically impos-

sible for an off-OCS employee to be injured "as the result of" on-OCS operations. Pacific offers no basis for this assertion, and we find none. Indeed, given that many OCS platforms are physically connected to onshore processing facilities via oil and gas pipelines, it is not difficult to imagine an accident occurring on an OCS platform that could injure employees located off the OCS.

Moreover, if, as Pacific suggests, the purpose of §1333(b) was to geographically limit the extension of LHWCA coverage to injuries that occurred on the OCS, Congress could easily have achieved that goal by omitting the following six words in §1333(b)'s text: "as the result of operations conducted." Had Congress done so, the statute would extend LHWCA coverage to the "disability or death of an employee resulting from any injury occurring on the outer Continental Shelf." But that is not the text of the statute Congress enacted.

Pacific also argues that, because all of §1333(b)'s neighboring subsections contain specific situs limitations, we should infer that Congress intended to include a situs-of-injury requirement in §1333(b). See, *e.g.,* §1333(a)(2)(A) (adopting the civil and criminal laws of the adjacent State as federal law "for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf").[2]

––––––––

[2] See also 43 U. S. C. §1333(a)(1) (extending the Constitution and federal laws of civil and political jurisdiction "to the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom, or any such installation or other device (other than a ship or vessel) for the purpose of transporting such resources, to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State"); §1333(c) (making the National Labor Relations Act

But our usual practice is to make the opposite inference. *Russello* v. *United States*, 464 U. S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion" (alteration and internal quotation marks omitted)). Congress' decision to specify, in scrupulous detail, exactly where the other subsections of §1333 apply, but to include no similar restriction on injuries in §1333(b), convinces us that Congress did not intend §1333(b) to apply only to injuries suffered on the OCS. Rather, §1333(b) extends LHWCA workers' compensation coverage to any employee injury, regardless of where it happens, as long as it occurs "as the result of operations conducted on the outer Continental Shelf."

Pacific argues that this conclusion is foreclosed by language in *Herb's Welding, Inc.* v. *Gray*, 470 U. S. 414 (1985), and *Offshore Logistics, Inc.* v. *Tallentire*, 477 U. S. 207 (1986); but neither of those cases held that §1333(b) extends only to injuries that occur on the OCS. In *Herb's Welding,* this Court considered whether an oil platform welder, who worked both within the territorial waters of Louisiana and on the OCS, was covered under the

---

applicable to any unfair labor act "occurring upon any artificial island, installation, or other device referred to in subsection (a) of this section"); §1333(d)(1) (granting the Coast Guard enforcement authority "on the artificial islands, installations, and other devices referred to in subsection (a) of this section or on the waters adjacent thereto"); §1333(d)(2) (granting the Coast Guard authority to mark "any artificial island, installation, or other device referred to in subsection (a) of this section" for the protection of navigation); §1333(e) (granting the Army authority to prevent the obstruction of access "to the artificial islands, installations, and other devices referred to in subsection (a) of this section"); §1333(f) (saving clause applying "to the subsoil and seabed of the outer Continental Shelf and the artificial islands, installations, and other devices referred to in subsection (a) of this section").

LHWCA after suffering an injury in the waters of Louisiana. 470 U. S., at 416–417. The Court explicitly declined to address whether the employee was eligible for workers' compensation benefits under §1333(b) because that question was neither passed upon by the Court of Appeals nor fully briefed and argued before this Court. *Id.*, at 426, n. 12. Although the Court acknowledged that an employee might walk in and out of workers' compensation coverage during his employment due to the "explicit geographic limitation to the [OCSLA's] incorporation of the LHWCA," *id.*, at 427, the exact meaning of that statement is unclear. We cannot ascertain whether the comment was a reference to §1333(b)'s explicit situs-of-operations requirement, as respondents suggest, or the recognition of an implicit situs-of-injury requirement, as Pacific argues. In any event, the ambiguous comment was made without analysis in dicta and does not control this case.

The same is true of the Court's opinion in *Offshore Logistics*. In that case, the Court considered whether the widows of oil platform workers who were killed when their helicopter crashed into the high seas could file wrongful-death suits under Louisiana law. In the Court's analysis of §1333, it stated, "Congress determined that the general scope of OCSLA's coverage . . . would be determined principally by locale, not by the status of the individual injured or killed." 477 U. S., at 219–220 (citing the situs requirement in §1333(a)(2)(A)). In a footnote, the Court commented: "Only one provision of OCSLA superimposes a status requirement on the otherwise determinative OCSLA situs requirement; §1333(b) makes compensation for the death or injury of an 'employee' resulting from certain operations on the Outer Continental Shelf payable under the [LHWCA]." *Ibid.*, n. 2. These comments about the scope of the OCSLA's coverage and its determinative "situs requirement" do not provide definitive evidence that §1333(b) applies only to injuries that occur on the OCS.

As in *Herb's Welding*, it is unclear whether the statement in the *Offshore Logistics* footnote regarding §1333(b) was referring to the explicit situs-of-operations requirement or to an implicit situs-of-injury requirement. Moreover, the entire footnote is dictum because, as the Court explicitly stated, §1333(b) had no bearing on the case. 470 U. S., at 219–220.

Finally, Pacific argues that including off-OCS injuries within the scope of the workers' compensation coverage created by §1333(b) runs counter to Congress' intent in drafting the OCSLA. According to Pacific, Congress intended to create a uniform OCS compensation scheme that both filled the jurisdictional voids and eliminated jurisdictional overlaps between existing state and federal programs. Pacific points out that, without a situs-of-injury requirement to narrow the scope of §1333(b), an off-OCS worker could be eligible for both state and federal workers' compensation coverage.

There is no indication in the text, however, that the OCSLA excludes OCS workers from LHWCA coverage when they are also eligible for state benefits. To the contrary, the LHWCA workers' compensation scheme incorporated by the OCSLA explicitly anticipates that injured employees might be eligible for both state and federal benefits. An offsetting provision in the LHWCA provides that "any amounts paid to an employee for the same injury, disability, or death for which benefits are claimed under [the LHWCA] pursuant to any other workers' compensation law or [the Jones Act] shall be credited against any liability imposed by [the LHWCA]." 33 U. S. C. §903(e). This provision, in addition to the lack of any textual support for Pacific's argument, convinces us that Congress did not limit the scope of 43 U. S. C. §1333(b)'s coverage to only those geographic areas where state workers' compensation schemes do not apply.

B

Pacific also offers an alternative argument derived from the interaction of §1333(b) and a provision of the LHWCA. Specifically, Pacific argues that because the LHWCA contains an explicit situs-of-injury requirement, see 33 U. S. C. §903(a) (providing benefits only for injuries occurring "upon the navigable waters" of the United States), and because 43 U. S. C. §1333(b) extends the LHWCA workers' compensation scheme to the OCS, §1333(b) incorporates the strict LHWCA situs-of-injury requirement from §903(a). According to Pacific, the words "occurring as the result of operations" in §1333(b) impose a status requirement in addition to the imported LHWCA situs-of-injury requirement, with the result that employees who are injured on the OCS, but whose jobs are not related to extractive operations, are excluded from the workers' compensation coverage created by §1333(b). Thus, an accountant who is injured on a field trip to the drilling platform would be ineligible under §1333(b) despite being an employee who is injured on the OCS.

Although this alternative argument has the advantage of assigning some meaning to the words "occurring as the result of operations" in §1333(b), we still find it unpersuasive. First, it is unlikely that Congress intended to impose a situs-of-injury requirement in §1333(b) through such a nonintuitive and convoluted combination of two separate legislative Acts. As we have already noted, creating an express situs-of-injury requirement in the text of §1333(b) would have been simple. Second, combining the §1333(b) definition of "United States" with the LHWCA situs-of-injury requirement in 33 U. S. C. §903(a) would result in an OCS workers' compensation scheme that applies only to the seabed of the OCS and to any artificial islands and fixed structures thereon. See 43 U. S. C. §1333(b)(3) (stating that "the term 'United States' when used in a geographical sense includes the outer Continental Shelf

and artificial islands and fixed structures thereon"). Pacific concedes that this scheme would exclude the navigable waters above the shelf, including the waters immediately adjacent to any drilling platforms. Consequently, under Pacific's view, even employees on a crew ship immediately adjacent to an OCS platform who are injured during a platform explosion would be excluded from §1333(b) coverage. That view cannot be squared with the text of the statute, which applies to "any injury occurring as the result of operations conducted" on the OCS.

## C

Pacific also makes several policy arguments in favor of a situs-of-injury requirement, but policy concerns cannot justify an interpretation of §1333(b) that is inconsistent with the text of the OCSLA. "[I]f Congress' coverage decisions are mistaken as a matter of policy, it is for Congress to change them. We should not legislate for them." *Herb's Welding,* 470 U. S., at 427. The language of §1333(b) simply does not support a categorical exclusion of injuries that occur beyond the OCS.

## IV

The Solicitor General urges us to adopt a status-based inquiry that applies one test to on-OCS injuries and a different test to off-OCS injuries. Specifically, the Government proposes that when a worker is injured on the OCS, he is eligible for workers' compensation benefits if he is employed by a company engaged in extractive operations on the OCS. But if the employee is injured off the OCS, the employee will be covered only if his "duties contribute to operations" on the OCS and if he performs "work on the [OCS] itself that is substantial in terms of both its duration and nature." Brief for Federal Respondent 35. This approach is derived from our decision in *Chandris, Inc.* v. *Latsis*, 515 U. S. 347 (1995) (establishing

criteria by which an employee qualifies as a "seaman" under the Jones Act), and might well have merit as legislation. But it has no basis in the text of the OCSLA as presently enacted. The "occurring as the result of operations" language in §1333(b) plainly suggests causation. Although the Government asserts that a status-based test would be preferable to a causation-based test, we cannot ignore the language enacted by Congress.

The Third Circuit's "but for" test is nominally based on causation, but it is also incompatible with §1333(b). Taken to its logical conclusion, the "but for" test would extend workers' compensation coverage to all employees of a business engaged in the extraction of natural resources from the OCS, no matter where those employees work or what they are doing when they are injured. This test could reasonably be interpreted to cover land-based office employees whose jobs have virtually nothing to do with extractive operations on the OCS. Because Congress extended LHWCA coverage only to injuries "occurring as the result of operations conducted on the outer Continental Shelf," we think that §1333(b) should be interpreted in a manner that focuses on injuries that result from those "operations." This view is consistent with our past treatment of similar language in other contexts. In *Holmes* v. *Securities Investor Protection Corporation*, 503 U. S. 258 (1992), we considered a provision of the Racketeer Influenced and Corrupt Organizations Act that provided a cause of action to "[a]ny person injured in his business or property *by reason of* a violation of section 1962." 18 U. S. C. §1964(c) (emphasis added). We rejected a "but for" interpretation, stating that such a construction was "hardly compelled" and that it was highly unlikely that Congress intended to allow all factually injured plaintiffs to recover. 503 U. S., at 265–266. Instead, we adopted a proximate-cause standard consistent with our prior interpretation of the same language in the Sherman and Clay-

ton Acts.  *Id.*, at 267–268.  Similarly, 43 U. S. C. §1333(b)'s language hardly compels the Third Circuit's expansive "but for" interpretation.

Accordingly, we conclude that the Ninth Circuit's "substantial-nexus" test is more faithful to the text of §1333(b).  We understand the Ninth Circuit's test to require the injured employee to establish a significant causal link between the injury that he suffered and his employer's on-OCS operations conducted for the purpose of extracting natural resources from the OCS.

Although the Ninth Circuit's test may not be the easiest to administer, it best reflects the text of §1333(b), which establishes neither a situs-of-injury nor a "but for" test. We are confident that ALJs and courts will be able to determine whether an injured employee has established a significant causal link between the injury he suffered and his employer's on-OCS extractive operations.  Although we expect that employees injured while performing tasks on the OCS will regularly satisfy the test, whether an employee injured while performing an off-OCS task qualifies—like Valladolid, who died while tasked with onshore scrap metal consolidation—is a question that will depend on the individual circumstances of each case.  The Ninth Circuit remanded the case for the Benefits Review Board to apply the "substantial-nexus" test in the first instance, and we agree with that disposition.

The judgment is affirmed, and the case is remanded to the Court of Appeals for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

No. 10–507

PACIFIC OPERATORS OFFSHORE, LLP, ET AL.,
PETITIONERS *v.* LUISA L. VALLADOLID
ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[January 11, 2012]

JUSTICE SCALIA, with whom JUSTICE ALITO joins, concurring in part and concurring in the judgment.

I join the Court's judgment that the Ninth Circuit properly remanded this case to the Benefits Review Board, and I agree with almost all of the Court's opinion. My disagreement is limited to the last two substantive paragraphs of Part IV, which endorse the Ninth Circuit's "substantial-nexus" test for determining the scope of coverage under 43 U. S. C. §1333(b). The Court indulges in considerable understatement when it acknowledges that this test "may not be the easiest to administer," *ante,* at 14. "Substantial nexus" is novel legalese with no established meaning in the present context. I agree with the Court's rejection of some of the clearer rules proposed by the parties—which, though easier to apply, are unmoored from the text of §1333(b). But if we must adopt an indeterminate standard (and the statute's "as the result of" language leaves us no choice) I prefer the devil we know to the devil of the Ninth Circuit's imagining. I would hold that an employee may recover under §1333(b) if his injury was *proximately caused* by operations on the Outer Continental Shelf (OCS).

The term "proximate cause" is "shorthand for a concept: Injuries have countless causes, and not all should give rise

to legal liability." *CSX Transp., Inc.* v. *McBride*, 564 U. S. ___, ___ (2011) (slip op., at 5). Life is too short to pursue every event to its most remote, "but-for," consequences, and the doctrine of proximate cause provides a rough guide for courts in cutting off otherwise endless chains of cause-and-effect. See *Holmes* v. *Securities Investor Protection Corporation*, 503 U. S. 258, 287 (1992) (SCALIA, J., concurring in judgment). Thus, as the Court notes in rejecting the Third Circuit's "but for" test for §1333(b) coverage, we have interpreted statutes with language similar to §1333(b) as prescribing a proximate-cause standard. See *ante,* at 13–14.

Although the doctrine of proximate cause is rooted in tort law and most commonly applied in negligence actions, it can also provide a useful guide in no-fault compensation schemes like this one. In *Brown* v. *Gardner*, 513 U. S. 115, 119 (1994), we considered a no-fault veterans' compensation statute covering injuries that occurred "as the result of" medical treatment (precisely the language at issue here); we suggested that the requisite "causal connection" between the injury and medical treatment may be "limited to proximate causation so as to narrow the class of compensable cases . . . by eliminating remote consequences." Similarly, some state workers' compensation laws use the concept of proximate cause to determine entitlement. See, *e.g., Ex parte Patton*, __ So. 3d __, __ (Ala. 2011); *Marandino* v. *Prometheus Pharmacy*, 294 Conn. 564, 591, 986 A. 2d 1023, 1041 (2010); *Grant* v. *Grant Textiles*, 372 S. C. 196, 201, 641 S. E. 2d 869, 871 (2007). Indeed, the statutory law of California, where Mr. Valladolid died while at work, limits workers' compensation liability to cases "[w]here the injury is proximately caused by the employment, either with or without negligence." Cal. Lab. Code Ann. §3600(a)(3) (West 2011).* I

————————
*Strange to say, the California Supreme Court has held that this

see no reason why the scope of 43 U. S. C. §1333(b) could not similarly be cabined by the familiar limits of proximate causation.

To be sure, proximate cause is an imperfect legal doctrine; I have no illusions that its tenets are easy to describe or straightforward to apply. Judicial opinions do not provide a uniform formulation of the test, and borderline cases are rarely clear. But "it is often easier to disparage the product of centuries of common law than to devise a plausible substitute." *McBride*, 564 U. S*., at ___ (ROBERTS, C. J., dissenting) (slip op., at 2–3). Unlike the substantial-nexus test, proximate cause provides a "vocabulary" for answering questions like the one raised by the facts of this case. It may be productive, for example, to consider whether the injury was "within the scope of the risk" created by OCS operations, or whether some "superseding or intervening cause" exists. *Id.,* at ___ (slip op., at 15). In addition to that vocabulary, precedents on proximate cause "furnish illustrations of situations which judicious men upon careful consideration have adjudged to be on one side of the line or the other." *Exxon Co., U. S. A.* v. *Sofec, Inc.*, 517 U. S. 830, 839 (1996) (internal quotation marks omitted).

"Substantial nexus," by contrast, is an indeterminate phrase that lacks all pedigree. Our case law has used it as a term of art in only one context, first appearing in Justice Blackmun's opinion for the Court in *Complete Auto Trans-*

———————

unmistakable term-of-art reference to a rule found in the common law of torts does *not* establish a rule "identical to that found in the common law of torts," but merely "elaborat[es] the general requirement that the injury arise out of the employment." *LaTourette* v. *Workers' Compensation App. Bd.*, 17 Cal. 4th 644, 651, n. 1, 951 P. 2d 1184, 1187, n. 1 (1998) (internal quotation marks omitted). Perhaps (who knows?) later California Supreme Court cases will "clarify" this general requirement by saying that it requires a "substantial nexoos" between the employment and the injury.

*it, Inc.* v. *Brady*, 430 U. S. 274, 279 (1977): We sustain state taxes against Commerce Clause challenges if they are, *inter alia*, "applied to an activity with a *substantial nexus* with the taxing State." *Oklahoma Tax Comm'n* v. *Jefferson Lines, Inc.*, 514 U. S. 175, 183 (1995) (emphasis added; internal quotation marks omitted). "[S]uch a nexus is established when the taxpayer 'avails itself of the substantial privilege of carrying on business' in that jurisdiction." *Polar Tankers, Inc.* v. *City of Valdez*, 557 U. S. 1, 11 (2009). That clarification—and any further clarification in the Commerce Clause context—will not be remotely helpful to lower courts attempting to apply the substantial-nexus test in the very different legal context of workers' compensation under §1333(b). In this latter context, I assume the Court means by "substantial nexus" a substantial *causal* nexus—since §1333(b)'s "as the result of" language "plainly suggests causation," *ante,* at 13. Like the word "nexus" itself, the definition of "substantial nexus" in our state-tax cases does not require any *causal* relationship whatsoever. The proximate-cause test, by comparison, represents a much more natural interpretation of a statute that turns on causation.

Does the Court mean to establish, by the novel "substantial [causal] nexus" test, a new *tertium quid* of causality—somewhere between but-for causality and proximate cause? One might think so, since there is no other sensible reason to (1) reject but-for cause, (2) say nothing about the natural alternative (proximate cause), and (3) embrace the "substantial [causal] nexus" novelty. On the other hand, the Court's opinion suggests at least some connection (that is to say, in the Court's favored lawspeak, some "nexus") between the proximate-cause standard and the substantial-nexus test, since it cites one of our proximate-cause cases just before concluding that "[a]ccordingly, . . . the Ninth Circuit's 'substantial-nexus' test is more faithful to the text of §1333(b)" than the Third Circuit's but-for

test. *Ante,* at 13–14. In the opinion below, moreover, the Ninth Circuit purported to endorse the Fifth Circuit's pre-1989 case law, which required "'that the claimant show a nexus . . . similar to the proximate cause test in tort law.'" 604 F. 3d 1126, 1140 (CA9 2010) (quoting *Mills* v. *Director, Office of Workers' Compensation Programs*, 846 F. 2d 1013, 1015 (CA5 1988), rev'd en banc, 877 F. 2d 356 (1989)). Who knows whether this is a *tertium quid* or not? The Court has given us a new test whose contours are entirely undescribed, and which has nothing to be said for it except that it will add complexity to the law and litigation to the courts.

Finally, I must note an additional uncertainty (or else a peculiarity) that the Court's opinion creates: The statutory text at issue requires compensation for "disability or death of an employee *resulting from* any injury *occurring as the result of* operations conducted on the outer Continental Shelf . . . ." §1333(b) (emphasis added). Before today, I would have thought it clear that courts must apply proximate-cause analysis to the "resulting from" provision; but that would seem quite peculiar if (as the Court holds today) we apply substantial-nexus analysis to the neighboring "occurring as the result of" provision. Surely both phrases express the same concept. What a tangled web we weave.

I would affirm the Ninth Circuit's judgment to remand the case to the Benefits Review Board, but with instructions to apply a proximate-cause test.