[No. C002555. Third Dist. Mar. 31, 1988.]

JIMMY WESTBROOKS, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
GREYHOUND LINES, INC., Respondents.

**COUNSEL**

James Fallman and Fallman & Janof for Petitioner.

Hanna, Brophy, MacLean, McAleer & Jensen and Michael S. Balavage for Respondents.

**OPINION**

EVANS, Acting P. J.—In this proceeding we review a decision of the Workers' Compensation Appeals Board denying Jimmy Westbrooks's claim for benefits for emotional injury arising out of a reckless driving incident while Westbrooks was on an assigned run for his employer, Greyhound Lines. The question presented is whether Westbrooks's reckless driving took him outside the course of his employment. We conclude it did not.

The material facts are without dispute. On September 30, 1984, Westbrooks, a bus driver for Greyhound, was driving an assigned run from Sacramento to Redding. On a two-lane stretch of Highway 99 approaching Gridley, Westbrooks entered a 45-mile-per-hour zone doing 55. He came up fast upon the tail of a car and blew his horn and blinked his lights for the car to pull aside. He then drove the bus out across the centerline to pass, apparently narrowly missing the car, and causing another oncoming car to pull onto the shoulder of the highway to avoid a collision. For this incident Westbrooks was subsequently convicted of reckless driving (Veh. Code, § 23103).[1]

---

[1] Westbrooks was charged with speeding, crossing a double solid centerline, and unsafe passing, as well as reckless driving. The record indicates he was convicted only of the reckless driving charge.

Westbrooks contended the incident was caused by mechanical failure of the bus, causing him to temporarily lose control of the vehicle. No matter how convincing the evidence in this regard may have been, however, Westbrooks is in no position, following his conviction for reckless driving, to argue he did not share at least some culpability for the incident in the form of "willful or wanton disregard for the safety of persons or property" (Veh. Code, § 23103; *People* v. *McNutt* (1940) 40 Cal.App.2d Supp. 835, 837-839 [105 P.2d 657]). (See *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601, 604-605 [25 Cal.Rptr. 559, 375 P.2d 439] [issue necessarily decided by prior criminal conviction conclusive against the convicted in subsequent civil action].) Indeed, it appears the workers' compensation

Following the conviction, Greyhound terminated Westbrooks because of the incident. Westbrooks filed a grievance, and an arbitration board ordered him reinstated, finding insufficient cause for the termination in that Greyhound had violated "Paragraph R."[2]

Westbrooks suffered emotional disability because of the near-accident on September 30 and the subsequent criminal proceedings, conviction, and disciplinary action. The workers' compensation judge awarded benefits, concluding the injury arose out of and in the course of Westbrooks's employment.

Greyhound petitioned the Board for reconsideration. The Board granted the petition, notwithstanding the workers' compensation judge's recommendation to the contrary, and rescinded the award, concluding Westbrooks's reckless driving constituted conduct outside the course of his employment. This petition for review followed.

The sole issue for our review is whether, on the facts given, Westbrooks was acting within the course of his employment at the time of his injury.[3]

Under the Workers' Compensation Act, an employee is entitled to compensation for injury "arising out of and in the course of the employment" when, inter alia, and irrespective of fault, "at the time of the injury, the employee is performing service growing out of and incidental to his or her employment." (Lab. Code, § 3600, subd. (a); see Cal. Const., art. XIV, § 4.) "The phrase 'in the course of employment' is frequently defined as such service as the employee is expected to render, when it occurs within the period of his employment, at a place where he may reasonably be for that purpose, and while he is engaged in fulfilling his duties or in doing something necessarily incident thereto. The term ordinarily refers to the time, place and circumstances under which the accident occurs." (*Griffin* v. *Industrial Acc. Com.* (1937) 19 Cal.App.2d 727, 732-733 [66 P.2d 176].) The determination whether injury-causing conduct was in the course of employment is necessarily decided on a case-by-case basis, taking into ac-

---

judge and the Board approached the issue in this manner, accepting Westbrooks's reckless driving as an inescapable conclusion. Nonetheless, as we shall observe, Westbrooks's culpability for the incident is not dispositive of whether it occurred in the course of his employment.

[2] Presumably "Paragraph R" is part of a collective bargaining agreement, but there is no elaboration in the record as to what it provides. Nonetheless, Westbrooks's reinstatement is immaterial here; it does not render his conviction for reckless driving any less conclusive.

[3] There is no dispute here that Westbrooks suffered emotional disability and that the disability arose out of and was proximately caused by the incident in question. Nor is there any dispute that, at least as to time and place, Westbrooks was rendering service for Greyhound.

count the particular circumstances of the case at hand (*id.,* at p. 732), and both the Board and this court are required to liberally interpret and apply the Workers' Compensation Act in favor of conferring benefits on the injured employee (*Dimmig* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 860, 866-867 [101 Cal.Rptr. 105, 495 P.2d 433]; *Lujan* v. *Workers' Comp. Appeals Bd.* (1985) 175 Cal.App.3d 212, 216-217 [220 Cal.Rptr. 561]; Lab. Code, § 3202). When the material facts of a case are given, that determination is treated as a question of law. (See *Dimmig, supra,* 6 Cal.3d at pp. 864-865.)

■ Employee misconduct, whether negligent, willful, or even criminal, does not necessarily preclude recovery under workers' compensation law. In the absence of an applicable statutory defense, such misconduct will bar recovery only when it constitutes a deviation from the scope of employment. (See *Traub* v. *Board of Retirement* (1983) 34 Cal.3d 793, 799-800 [195 Cal.Rptr. 681, 670 P.2d 335]; *Wiseman* v. *Industrial Acc. Com.* (1956) 46 Cal.2d 570, 572-573 [297 P.2d 649]; *Associated Indem. Corp.* v. *Ind. Acc. Com.* (1941) 18 Cal.2d 40, 47 [112 P.2d 615]; 1A Larson, Workmen's Compensation Law (1985) §§ 30.00, 35.00.) In determining whether particular misconduct takes an employee outside the scope of his employment, "A distinction must be made between an unauthorized departure from the course of employment and the performance of a duty in an unauthorized manner. Injury occurring during the course of the former conduct is not compensable. The latter conduct, while it may constitute serious and willful misconduct by the employee (Lab. Code, § 4551), does not take the employee outside the course of his employment. [Citations.]" (*Pacific Tel. & Tel. Co.* v. *Workers' Comp. Appeals Bd.* (1980) 112 Cal.App.3d 241, 245 [169 Cal.Rptr. 285]; *Auto Lite etc. Corp.* v. *Ind. Acc. Com.* (1947) 77 Cal.App.2d 629, 631-632 [176 P.2d 62]; 1A Larson, *op. cit. supra,* § 35.20.)

"Situations are conceivable where all would probably agree that compensation should be awarded even though a crime was committed. Take the case where an employee is injured while driving a car with defective brakes or without lights at night while engaged in conducting his employer's business or is required to make fast deliveries and so operates it that he is guilty of speeding, *reckless driving,* or even manslaughter." (*State Comp. Ins. Fund* v. *Ind. Acc. Com.* (1952) 38 Cal.2d 659, 670 [242 P.2d 311], italics added.)[4]

Thus, in *Western Pac. R.R. Co.* v. *Ind. Acc. Com.* (1924) 193 Cal. 413, 421-422 [224 P. 754], the fact that the employee messenger, on an errand

---

[4] Although not applicable here, we note that the Workers' Compensation Act has been amended recently to preclude compensation "Where the injury is . . . caused by the commission of a felonious act by the injured employee, for which he or she has been convicted." (Lab. Code, § 3600, subd. (a)(8), added by Stats. 1986, ch. 755, § 1.)

for his employer, was injured while riding an unlighted bicycle, in violation of a Vehicle Code section, did not preclude compensation.

And in *Williams* v. *Workmen's Comp. Appeals Bd.* (1974) 41 Cal.App.3d 937 [116 Cal.Rptr. 607], the fact that the employee messenger, on an errand for his employer, was injured following a high-speed chase, through heavy traffic and after he had run a red light, did not preclude compensation; the employee "was engaged in the performance of his duty—returning to his place of employment to deliver items collected on his errands—and the fact that he was performing that duty in a 'negligent' or unlawful manner did not constitute abandonment of employment." (*Id.,* at p. 940.)

■ It is not an unusual or a startling proposition that a bus driver, employed to transport people on the highways, and on schedule, might occasionally suffer a lapse in judgment and violate a rule of the road. The fact that such a violation is criminal and may even have resulted in a criminal conviction does not add anything to the "course of employment" calculus in the employer's favor in the absence of an applicable statutory qualification. The driver was performing the ultimate "thing" for which he was employed—driving—albeit by a negligent or even a reckless and criminal "method." Any employer could argue that reckless, intentional, or criminal conduct is not part of any job description and therefore not within the scope of employment. This argument, however, if permitted to succeed, would totally undermine the no-fault foundation of workers' compensation law. Indeed, the Workers' Compensation Act contemplates that intentional ("serious and willful") misconduct may occur within the course of one's employment and that any injury resulting from such misconduct should not necessarily preclude recovery of benefits. (See Lab. Code, § 4551.)

■ The law of workers' compensation and of respondeat superior share the same underlying philosophy—both are essentially no-fault doctrines, employing notions of fairness and expediency in allocating to an employer, as a required cost of doing business, responsibility for those risks "that may fairly be regarded as typical of or broadly incidental to the enterprise he has undertaken" (5 Harper et al., The Law of Torts (2d ed. 1986) § 26.7, p. 27). (See *Rodgers* v. *Kemper Constr. Co.* (1975) 50 Cal.App.3d 608, 618-619 [124 Cal.Rptr. 143]; 5 Harper et al., *op. cit. supra,* at pp. 28-31, and at § 26.10, pp. 58-59 & fn. 8; 2 Witkin, Summary of Cal. Law (9th ed. 1987) Agency & Employment, § 115, p. 109; 2 Witkin, *op. cit. supra,* Workers' Compensation, § 1, pp. 560-561.) "One way to determine whether a risk is inherent in, or, created by, an enterprise is to ask whether the actual occurrence was a generally foreseeable consequence of the activity. However, 'foreseeability' in this context must be distinguished from 'foreseeability' as a test for negligence. In the latter sense 'foreseeable' means a level of probability

which would lead a prudent person to take effective precautions whereas 'foreseeability' as a test for *respondeat superior* merely means that in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business." (*Rodgers* v. *Kemper Constr. Co., supra,* 50 Cal.App.3d at pp. 618-619; see *Western Pac. R.R. Co.* v. *Indus. Acc. Com., supra,* 193 Cal. at p. 421, echoing essentially the same notion in the context of workers' compensation law.) ▮ Unquestionably Greyhound would have incurred liability to any third persons who may have been injured as a result of Westbrooks's reckless driving. (See *Meyer* v. *Blackman* (1963) 59 Cal.2d 668, 677-680 [31 Cal.Rptr. 36, 381 P.2d 916].) In the absence of an applicable defense under the Workers' Compensation Act that takes into account the employee's culpability, it is doctrinally inconsistent to suggest that Westbrooks is not equally entitled to compensation for injuries he suffered as a result of the same occurrence.

*Rockwell International* v. *Workers' Comp. Appeals Bd.* (1981) 120 Cal.App.3d 291 [175 Cal.Rptr. 219], *Pacific Tel. & Tel. Co.* v. *Workers' Comp. Appeals Bd., supra,* 112 Cal.App.3d 241, and *Hodges* v. *Workers' Comp. Appeals Bd.* (1978) 82 Cal.App.3d 894 [147 Cal.Rptr. 546], are inapposite here and do not support the Board's denial of compensation to Westbrooks. *Hodges* involved horseplay, for which has developed in this state a totally separate and distinct line of authority. (82 Cal.App.3d at pp. 899-902.) *Pacific Tel.* involved an advertising salesman who allegedly had forged customer signatures on advertising contracts. The court held that such conduct, if proven, could not conceivably be considered to have been within the course of employment. (112 Cal.App.3d at pp. 246-247.) *Rockwell* involved conduct surrounding which there were too many "unanswered questions" to determine whether it was or was not within the course of employment. (120 Cal.App.3d at pp. 296-298.) *Pacific Tel.* and *Rockwell* merely underscore that the criteria for determining whether given conduct is inside or outside the scope of employment are fluid and that the question must therefore be decided on the facts peculiar to each case.[5] In the case before us, we believe it justifiably conceivable that a person who drives for pay may occasionally violate a rule of the road on his journeys. It is proper, therefore, to allocate the risk for resulting injury to the employer.

---

[5] *Pacific Tel., supra,* 112 Cal.App.3d 241, and *Rockwell, supra,* 120 Cal.App.3d 291, do not stand for the blanket proposition that injury resulting from or incidental to proven criminal conduct is automatically noncompensable. Indeed, in *Rockwell,* decided by the same court that decided *Pacific Tel.,* it was stated that whether the conduct in question is criminal or noncriminal in nature is not a critical distinction in applying "course of employment" analysis. (120 Cal.App.3d at p. 297.)

The Board's decision is annulled and the matter is remanded for further proceedings consistent with this opinion.

Blease, J., and Deegan, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.