Filed 5/24/24 (unmodified opn. attached)

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| 3 STONEDEGGS, INC. et al., | C098711 |
| Petitioners, | (Super. Ct. No. ADJ14015513) |
| v. | |
| WORKERS' COMPENSATION APPEALS BOARD AND BRADEN NANEZ, | ORDER MODIFYING OPINION [NO CHANGE IN JUDGMENT] |
| Respondents. | |

ORIGINAL PROCEEDING; writ of review from a decision of the Workers' Compensation Appeals Board. Decision affirmed.

Hanna, Brophy, MacLean, McAleer & Jensen and Kelly J. Hamilton; Jones Mayer and Scott Davenport for Petitioners.

Department of Industrial Relations, Allison J. Fairchild for Respondent Workers' Compensation Appeals Board.

Law Offices of Larry S. Buckley and Robert L. Davis; Smith & Baltaxe and Bernhard D. Baltaxe for Respondent Braden Nanez.

THE COURT:

It is ordered that the opinion filed herein on May 10, 2024, be modified as follows: On page 27, the paragraph after the heading "Disposition" is deleted and replaced with the following:

The judgment of the Workers' Compensation Appeals Board is affirmed. Respondent Nanez is awarded costs of this proceeding.

This modification does not change the judgment. The Workers' Compensation Appeals Board did not incur costs in this proceeding. (Gov. Code, § 6103, subd. (a).)

BY THE COURT:

_____
HULL, Acting P. J.

_____
MESIWALA, J.

_____
WISEMAN, J.*

_____

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 4/23/24 Certified for Publication 5/10/24 (order attached) (unmodified version)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| 3 STONEDEGGS, INC. et al.,<br><br>Petitioners,<br><br>v.<br><br>WORKERS' COMPENSATION APPEALS BOARD AND BRADEN NANEZ,<br><br>Respondents. | C098711<br><br>(Super. Ct. No. ADJ14015513) |

Under the "commercial traveler" rule in workers' compensation law, an employee traveling on the employer's business is regarded as acting within the course of employment during the entire period of travel. (*LaTourette v. Workers' Comp. Appeals Bd*. (1998) 17 Cal.4th 644, 652 (*LaTourette*).)  As a result, workers' compensation

3

coverage applies to injuries the employee sustains during the travel itself and during the course of other personal activities "reasonably necessary for the sustenance, comfort, and safety of the employee," such as procuring food and shelter. (*Ibid*.) However, personal activity not reasonably contemplated by the employer may constitute a material departure from the course of employment. (*Ibid*.)

In this matter, respondent Workers' Compensation Appeals Board (the Board) determined that under the commercial traveler rule, workers' compensation coverage applied to injuries respondent Braden Nanez sustained in an auto accident while he was off work and away from his job at a remote fire base camp. The employer, petitioner 3 Stonedeggs, Inc., expected employees not to leave the job site and to notify a manager if they did. Nanez did not notify a manager he was leaving camp. Rescinding the findings of the administrative law judge, the Board found that Nanez's use of his own car while off work to drive approximately 70 miles away from camp purportedly to obtain cellular service was conduct reasonably expected by his employer to be incident to its requirement that Nanez spend time away from home where cellular service was not adequately provided at the camp. The Board concluded that Nanez's travel was for comfort and leisure and was not a distinct departure from his employment.

In this petition for writ of review, petitioners 3 Stonedeggs, Inc. dba California Sandwich Company and Technology Insurance Company, Inc. administered by Amtrust North America contend the Board acted in excess of its authority and that substantial evidence does not support the Board's findings. They argue that the evidence shows that Nanez was injured during a material deviation from his employment; he left the camp without employer approval on a personal activity that, under the unique circumstances of working at this remote fire camp, was not contemplated by the employer. Alternatively, petitioners claim that Nanez left the camp for an expressly prohibited activity.

We deny the petition, as substantial evidence supports the Board's findings.

4

FACTS AND HISTORY OF THE PROCEEDINGS

The employer is a mobile food service that contracts with the U.S. Forest Service to provide meals for firefighters and supporting personnel. Nanez, 19 years of age, began working for the employer as a food service worker on September 11, 2020, at a fire camp in Brownsville, California. Jesse Rice, the employer's general manager, asked Nanez whether he would prefer to commute to the site and work either the AM or PM shift or stay on site and work both shifts. Nanez chose to stay on site as he was hoping to get as many hours as possible. Rice informed Nanez that alcohol and drugs were not allowed at any time while working or before working.

While at Brownsville, Nanez wanted to go to his home in Chico for a day to do laundry and grab some more clothes. James Todd, one of the employer's Brownsville camp managers, told Nanez he could leave after breakfast and return the following afternoon. Nanez left for the night, but he returned the following morning at around 4:30 a.m. This meant he would have left his house at around 3:00 a.m. Todd had a "big safety conversation" with Nanez. He told Nanez the roads into the camp were dark and windy, and he did not want Nanez driving at that hour. Todd also knew that Nanez had worked hard the prior two weeks and must have been tired. He did not want Nanez driving while tired.

At the end of September, the employer had the opportunity to serve another fire camp outside of Happy Camp, California, a remote town about 70 miles from Yreka. Rice asked the employees if any of them wanted to work at that camp. They would have to stay on site, as the job would last from three to six months. Nanez volunteered to go. On September 28, 2020, Rice, Kyle Brossard, who was the Happy Camp on-site manager, and Brandon Duarte, another employee, left Brownsville to set up the new camp. Nanez drove home that day to rest, do laundry, and pack additional supplies he

5

would need. With the approval of his managers, he drove his personal car to Happy Camp the next day, September 29.

Before Nanez left Brownsville, Todd spoke with him again about safety. Because they had been working hard and for long hours, he asked Nanez to get some sleep before driving home to Chico and then on to Happy Camp. Todd again told Nanez never to drive while tired. If Nanez did not feel comfortable driving, he should pull over. Todd again made clear the importance of safe driving.

At Happy Camp, the employees worked two shifts each day, seven days a week: a morning shift of five hours beginning at 4:00 a.m., and an evening shift of five hours beginning at 4:00 p.m. Between the two shifts, the employees would nap, shower, and do leisure activities around the camp. How the employees spent their off time was at their discretion.

The employees were expected to stay on site. The "expectation" was that no employees should leave the camp unless they were designated as drivers. Brossard told the employees that for safety reasons, the employer did not want employees leaving camp "if they don't have to"; the employer would purchase everything they needed. The employer was concerned about employees driving the rural roads at night and about the heavy equipment and fire personnel on the roads due to fire activity. The roads were also very remote and had no cell service. The managers "really encouraged" employees not to drive on the roads. They wanted to limit any drives into town "if possible" by the team.

The employer tried to provide for all the employees' needs. It provided climate-controlled travel trailers for sleeping and shelter. It provided food, clothing, and toiletries. It also provided a TV, a DVD player, a selection of movies, and a game console for entertainment. Employees could request items be brought to camp, and the employer would bring them on regular delivery runs. Employees could also obtain basic provisions at a general store in Happy Camp approximately a mile away. They should not otherwise be leaving camp for any "work-related business like that."

If an employee needed to leave camp, he was expected to tell a manager. The employer "laid out" the expectation that if someone needed to leave camp for a personal reason, the employer would give him the shift prior to his departure off. This allowed the employee to get extra sleep before traveling. At no time was an employee to leave camp without arranging the leave with a supervisor multiple days in advance.

As at the Brownsville camp, the employer prohibited alcohol and drugs at the camp. Under their contracts, the camps essentially became government-permitted facilities where such items were prohibited. The employer explained this policy to employees when they first arrived at the camp.

The employer generally gave employees days off if the work assignment went longer than a few weeks. Because the Happy Camp assignment was expected to last from three to six months, the employer intended to give employees a weekend off every few weeks.

Duarte worked as a server, and he helped Brossard prepare food in the mornings. He understood that employees were not to leave the camp unless they needed to run to the store in Happy Camp for supplies. That trip required authorization from Rice.

On one occasion, Duarte spoke with Nanez about "smoking weed" at camp. Nanez had wandered off into the forest, and when he came back, "he definitely didn't look just tired." Duarte told Nanez that "that type of stuff" was not allowed at camp and would get them all kicked out. Nanez said he would throw it away.

On October 5, 2020, six days after arriving at the camp, Nanez awoke for his shift at 4:45 a.m. He left "to town" in his car after his breakfast shift at 8:45 a.m. He did not tell Brossard that he was going to leave the camp or that he needed to leave. Brossard was not aware of any reason why he left camp that day. Upon hearing of Nanez's departure, Rice planned for he or Todd to explain again to Nanez their desire for him not to leave camp because of safety reasons.

7

When Brossard awoke from napping at 2:00 p.m. on October 5, Nanez had not returned. Brossard had received a text message from Nanez stating he had driven past the exit and should be back at camp around 4:00 p.m. Brossard texted him back telling him dinner was starting soon and they needed him in camp. Brossard later asked Nanez by text if he was okay. Brossard did not receive a response.

That afternoon, at approximately 2:10 p.m., Nanez was driving northbound on state route 263 north of Yreka when his car went into the southbound lane and collided head-on with an oncoming van. Nanez suffered a fractured femur and a severe closed head injury, and he was comatose.

Two California Highway Patrol officers who responded to the accident reported smelling the odor of burnt marijuana while inspecting Nanez's car. One officer observed what appeared to be ash on the driver's floorboard, the front passenger's floorboard, and in the center console area. He did not find any marijuana or means of ingesting the marijuana in the car. Due to Nanez's injuries and incapacitation, the officer was unable to determine whether Nanez had been impaired. That evening at the hospital, Nanez's urine tested positive for THC.

Upon learning of the accident, Rice held a conference call with Brossard, Todd, and Duarte. He told the men that moving forward, he wanted them to drive only during full day-time hours and only for essential business.

In an unsworn statement prepared later, Todd stated, "[Nanez] must have stayed up and finished his remaining work and since he didn't have service at the camp he probably drove into town to get service to make some phone calls. [Brossard] told me [Nanez] did not bring it up with him about leaving camp first and that if it was brought up, [Brossard] would have talked him out of going. [Brossard] had service and would have let [Nanez] use his phone and he was already letting [Duarte] use it so it wouldn't of [sic] been an issue." At the time of the accident, Todd was bringing a Verizon hotspot to camp.

8

Brossard's cell phone worked the entire time while he was at Happy Camp. Verizon had service there, but other carriers did not. Rice had cell coverage because he used Verizon. He did not know if Nanez had cell phone service.

The employer denied Nanez's claim for workers' compensation coverage, and the matter went to trial before Administrative Law Judge (ALJ) Curt Swanson. Initially, the ALJ rejected the employer's defense of intoxication. Although there was evidence Nanez had used marijuana, there was no evidence the marijuana in his system produced intoxication or was a substantial factor in causing the accident.

However, the ALJ concluded that Nanez was not entitled to coverage. By leaving the camp in violation of the employer's policy, without the employer's knowledge or approval, and for no known purpose, Nanez materially deviated from the course and scope of his employment. The deviation was a complete and material departure from the employer's business, and it was the proximate cause of Nanez's injury.

Nanez filed a petition for reconsideration with the Board. He contended that under the commercial traveler rule, he was entitled to coverage because he was never told he could not leave camp, and that under the isolating circumstances of the job, his trip during leisure hours was reasonably contemplated by the employer as incident to the requirement that he spend time away from home.

The Board agreed with Nanez and rescinded the ALJ's opinion. In an opinion and decision dated February 15, 2023, the Board determined that the commercial traveler rule applied to Nanez's claim. The Board explained, "Because [the employer] (1) allowed applicant to travel by his own car from the Brownsville camp to his Chico home and then return to continue his work there; (2) sought and obtained applicant's agreement to travel to Happy Camp on its business; (3) authorized applicant to travel to Happy Camp using his own car; and (4) did not instruct applicant to refrain from using his own car during his off hours or for personal reasons, applicant's conduct in using his own car during his off

9

hours to drive from Happy Camp to Yreka was conduct reasonably expected by [the employer] to be incidental to its requirement that he spend time away from home."

Also, because the record did not disclose Nanez's reasons for traveling to Yreka other than, in the Board's words, Todd's "surmise" that it was to use his cell phone, and because Nanez traveled during his off hours and between shifts, the record suggested that Nanez's travel was for comfort or leisure and was not a distinct departure from his employment. The Board also found that the evidence did not establish that Nanez's claim was barred by the defense of intoxication.

Petitioner Technology Insurance Company, Inc., petitioned the Board for reconsideration. The Board denied the petition by an opinion and order dated April 21, 2023.

## DISCUSSION

### I

### *Standard of Review*

Labor Code section 5952 prescribes the scope of our review of the Board's decision. Our sole obligation is to review the entire record to determine whether (1) the Board acted without authority or in excess of its powers; (2) its decision was procured by fraud; (3) the decision was unreasonable; (4) the decision was not supported by substantial evidence; or (5) any findings of fact support the decision. (Lab. Code, § 5952; *Adventist Health v. Workers' Comp. Appeals Bd.* (2012) 211 Cal.App.4th 376, 385.) We may not hold a trial de novo, take evidence, or exercise our independent judgment on the evidence. (*Ibid.*)

We consider questions of law de novo, but we accord great deference to the Board's interpretation of the law unless it is clearly mistaken. (*Pearson Ford v. Workers' Comp. Appeals Bd.* (2017) 16 Cal.App.5th 889, 895.) The Legislature requires we

10

liberally construe workers' compensation statutes in favor of conferring benefits on the injured employee. (*Ibid*.; Lab. Code, § 3202.)

When the Board's decision is challenged for a lack of substantial evidence, we must examine the entire record to determine whether that is the case. (*LeVesque v. Workmen's Comp. Appeals Bd.* (1970) 1 Cal.3d 627, 637.) The Board's factual findings, when supported by substantial evidence, are binding on us. (*South Coast Framing, Inc. v. Workers' Comp. Appeals Bd.* (2015) 61 Cal.4th 291, 303.) Substantial evidence is evidence that is reasonable, credible, and of solid value, which a reasonable mind might accept as adequate to support a conclusion. (*Ibid*.) We may not isolate evidence which supports or disproves the Board's conclusions and ignore other facts which rebut or explain the supporting evidence. (*Ibid*.)

We resolve reasonable doubts as to whether an injury occurred in the course and scope of employment in favor of the employee. (*Department of Rehabilitation v. Workers' Comp. Appeals Bd.* (2003) 30 Cal.4th 1281, 1290.) When the material facts of a case are given, the determination of whether injury-causing conduct was in the course of employment is treated as a question of law. (*Westbrooks v. Workers' Comp. Appeals Bd.* (1988) 203 Cal.App.3d 249, 253.)

We are not required to accept the Board's factual findings which we determine are unreasonable, illogical, improbable, or inequitable when viewed in light of the overall statutory scheme. (*Western Growers Ins. Co. v. Workers' Comp. Appeals Bd.* (1993) 16 Cal.App.4th 227, 233.) An award of compensation may not be based on surmise, conjecture, or speculation. (*LaTourette, supra*, 17 Cal.4th at p. 656.)

II

*Board's Jurisdiction*

At oral argument, the employer argued for the first time in this appeal that the Board lacked jurisdiction to hear Nanez's petition for reconsideration. Ordinarily, we do

not consider points raised for the first time at oral argument, including arguments that the government agency party whose decision is being reviewed lacked jurisdiction to hear the matter.  (See *City of Palo Alto v. Public Employment Relations Bd.* (2016) 5 Cal.App.5th 1271, 1318.)

In any event, we disagree with employer's contention.  Under Labor Code section 5903, a person aggrieved by an ALJ's decision granting or denying compensation may petition for reconsideration within 20 days after service of the decision.  This time limit is jurisdictional.  (*Maranian v. Workers' Comp. Appeals Bd.* (2000) 81 Cal.App.4th 1068, 1076.)  However, if a party has not been properly served with an ALJ's order, the time limit for filing a petition for reconsideration begins to run when the party receives the order.  (*Hartford Accident & Indem. Co. v. Workers' Comp. Appeals Bd.* (1978) 86 Cal.App.3d 1, 3-4.)

The ALJ served his decision by e-mail on August 11, 2022.  On October 3 or 4, 2022, Nanez requested leave to file a reconsideration petition more than 20 days after service of the ALJ's decision.  Nanez's counsel and counsel's paralegal declared under penalty of perjury that they did not receive the ALJ's decision until September 15, 2022.  The Board granted reconsideration.  In its opinion on the merits, the Board found that Nanez had not received the ALJ's decision until September 15, and thus his petition for reconsideration filed October 3, 18 days after receipt, was timely.

The Board's findings of fact are conclusive and final so long as they are supported by substantial evidence.  (*South Coast Framing, Inc. v. Workers' Comp. Appeals Bd.*, *supra*, 61 Cal.4th at p. 303.)  The Board's finding that Nanez did not receive the ALJ's decision until September 15 is supported by substantial evidence—the sworn declarations of Nanez's counsel and counsel's paralegal.  We are bound by the Board's factual finding.  The Board thus had jurisdiction to address Nanez's petition for reconsideration.

III

*Commercial Traveler Rule*

The employer contends the Board erred by concluding Nanez's injuries were compensable under the commercial traveler rule. It asserts the evidence shows only that Nanez's leaving the remote camp without approval and where all of his personal needs were provided by the employer was a personal activity which the employer would not reasonably have contemplated. Contrary to the Board's finding, the evidence established that the employer instructed Nanez to refrain from using his car during off hours and for personal reasons. The employer argues that as a result, Nanez's travel from camp was a material departure from his scope of employment and was not covered under the commercial traveler's rule.

To receive workers' compensation, the injured employee must prove by a preponderance of the evidence that his injury arose out of and was in the course of employment. (*LaTourette, supra*, 17 Cal.4th at p. 650; Lab. Code, § 3600.) In applying this two-pronged requirement, we are to construe it liberally in favor of awarding benefits. (*LaTourette,* at pp. 650-651.)

The first prong, "in the course of employment," ordinarily refers to the time, place, and circumstances under which the injury occurred. (*LaTourette, supra*, 17 Cal.4th at p. 651.) "Thus ' "[a]n employee is in the 'course of his employment' when he does those reasonable things which his contract with his employment expressly or impliedly permits him to do." ' " (*Ibid*.)

The second prong, "arising out of employment," concerns whether the injury occurred by reason of a condition or incident of the employment. (*LaTourette, supra*, 17 Cal.4th at p. 651.) In other words, " 'the employment and the injury must be linked in some causal fashion.' " (*Ibid*.) This causation element requires only " ' "that the

13

employment be one of the contributing causes without which the injury would not have occurred." ' " (*Id.*, at fn. 1.)

The mere fact an employee during working hours is performing a personal act when injured does not per se preclude him from compensation. (*LaTourette, supra*, 17 Cal.4th at p. 651.) If the particular act is reasonably contemplated by the employment, injuries received while performing that act arise out of the employment and are compensable. (*Ibid.*)

Generally, an employee commuting to and from a fixed place of business at fixed hours is not considered to be acting within the scope of his employment. Under the so-called going and coming rule, injuries suffered during the ordinary local commute are not compensable. (*Hinojosa v. Workmen's Comp. Appeals Bd.* (1972) 8 Cal.3d 150, 157.) That is because the employment plays no special role in the need for transportation other than the normal need of the employees' presence to perform their work. (*Ibid.*)

The commercial traveler rule is an exception to the going and coming rule. (*Jeewarat v. Warner Bros. Entertainment Inc.* (2009) 177 Cal.App.4th 427, 437.) Under the rule, employees " 'whose work entails travel away from the employer's premises are held . . . to be within the course of their employment continuously during the trip, except when a distinct departure on a personal errand is shown.' " (*IBM Corp. v. Workers' Comp. Appeals Bd.* (1978) 77 Cal.App.3d 279, 282 (*IBM Corp.*).) Workers' compensation coverage "applies to the travel itself and also to other aspects of the trip reasonably necessary for the sustenance, comfort, and safety of the employee." (*LaTourette, supra*, 17 Cal.4th. at p. 652.) A traveling employee "could hardly [be] expected to remain holed up in his hotel room." (*Fleetwood Enterprises, Inc. v. Workers' Comp. Appeals Bd.* (2005) 134 Cal.App.4th 1316, 1327.)

The commercial traveler rule "does not, however, apply to any and all activities. 'Personal activity not contemplated by the employer may constitute a material departure

14

from the course of employment.' " (*LaTourette, supra*, 17 Cal.4th. at p. 652.)  The activity must bear some relation to the purposes of the employment.  (*Id*. at p. 653.)

A.    Was Nanez a commercial traveler?

We must initially determine whether substantial evidence supports the Board's determination that Nanez was a commercial traveler at the time of the accident.  As stated, a commercial traveler for purposes of workers' compensation law is an employee "whose work entails travel away from the employer's premises." (*IBM Corp., supra*, 77 Cal.App.3d at p. 282.)  The commercial traveler rule connotes a wide range of activity, " 'such as, the travel of salesmen, executive, professional and technical personnel, and others who may be called upon to represent or perform work for an employer at some distance from headquarters.' " (*Hartford Accident & Indemnity Co. v. Workers' Comp. Appeals Bd.* (1982) 132 Cal.App.3d 796, 805.)  The rule is applicable "only in those cases in which the employee's traveling was a part of the employee's work, that is, a part of the service to be performed by the employee for the employer." (*Ibid*.)

The employer contends that Nanez was not a commercial traveler because his employment at the camp was on a "quasi-permanent basis" and was not "an out-of-town temporary duty."  To support his argument, the employer relies on the panel decision of *Henein v. Workers' Comp. Appeals Bd.* (1958) 50 Cal.Comp.Cases 279 [1985 Cal. Wrk. Comp. LEXIS 3760] (*Henein*), where the Board determined an employee was not a commercial traveler because his work abroad was on a quasi-permanent basis.

The employee in *Henein* was employed as a civil engineer in Saudi Arabia.  The employer provided him with housing, utilities, and a subsistence allowance in addition to a salary and transportation for company business either by a company carpool, bus, or rented car.  He was injured while off work when he was driving his personal vehicle to a shopping center on a personal errand.  (*Henein, supra*, 50 Cal.Comp.Cases at p. 280.)

15

The Board concluded that the employee's injuries were not compensable. According to the case summary, which is all that is provided for the case, the injuries were not compensable because the employee's activities were not necessary to his employment, were remote from his place of work and its attendant risk, and were pursued on the employee's free time. (*Henein, supra*, 50 Cal.Comp.Cases at p. 280.) The Board also found that the employee was not a commercial traveler "on an out-of-town temporary duty assignment because his work in Saudi Arabia was on at least a quasi-permanent basis." (*Ibid.*)

Board panel cases such as *Henein* are citable for their persuasive value, especially as an indication of contemporaneous interpretation and application of workers' compensation laws, but unlike en banc decisions of the Board, they have no precedential value. (*Gee v. Workers' Comp. Appeals Bd.* (2002) 96 Cal.App.4th 1418, 1424, fn. 6.) *Henein* shows one way the Board determines whether an employee is a commercial traveler. An employee out of town on a temporary duty assignment is a commercial traveler, but an employee who is out of town on a quasi-permanent assignment is not. (See *IBM Corp., supra*, 77 Cal.App.3d at p. 283 [award affirmed where the employee was killed in an auto accident during a normal leisure incident "of his [(10-day)] temporary duty assignment"].)

*Henein*, however, omits significant information relevant to determining whether an employee is on a quasi-permanent assignment. It does not define a "quasi-permanent" assignment, nor does it explain the factors the Board used to determine that the employee's Saudi Arabia assignment was quasi-permanent. We are not told the length of the employee's assignment there, why he was stationed there, or what his work activities were. The case does not assist us much.

The Board argues that to the extent *Henein* is persuasive, this matter is distinguishable from *Henein*. In this matter, the employer hired employees like Nanez "for a three-to-six month, temporary stint at the remote Happy Camp to provide meals to

16

firefighters during fire season."  The Board found that Nanez was a commercial traveler "based on the evidence in this case."  But the Board does not explain why a three-to-six month assignment is a temporary "stint" or duty assignment and not a quasi-permanent assignment.

No party cites to reported case law or other Board decisions that explain how to determine whether the employee is a commercial traveler or is rather on a "quasi-permanent" assignment, and we have found none.  To us, a useful approach arises by recognizing that the commercial traveler rule is an exception to the going and coming rule.  That rule precludes compensation where the injury occurs during the employee's ordinary, daily, local commute to and from his fixed place of employment at fixed hours and in the absence of special or extraordinary circumstances.  (*Hinojosa, supra*, 8 Cal.3d at p. 157.)  It excludes from coverage "the ordinary, local commute that marks the daily transit of the mass of workers to and from their jobs; the employment, there, plays no special role in the requisites of portage except the normal need of the presence of the person for the performance of the work."  (*Ibid.*)

Nanez's traveling does not comport with the type of travel subject to the going and coming rule.  His travel to Happy Camp was not an ordinary, daily, local commute to a fixed place of employment.  His employment required him to reside at the place of work away from his home for a limited duration.  And it was both his and the employer's intention that upon completion of the assignment, he would return to reside at his home in Chico.  He would not, for all intents and purposes, make Happy Camp his residence or domicile from where he would daily commute to work.  This evidence indicates Nanez's assignment at Happy Camp was not "quasi-permanent" for purposes of workers' compensation law.

It is true that the camp at Happy Camp was one of the employer's bases of operation.  But there is no evidence the employer intended to remain there and use it as a permanent or fixed base of operations or its headquarters.  Indeed, due to the detrimental

17

effect of Nanez's accident on the camp staff, the employer asked for and received an early release from its contract. It broke down the camp and pulled all of its equipment out on October 31, 2020, approximately one month after it had set up the camp.

Substantial evidence thus supports the Board's determination that Nanez was a commercial traveler at the time of the accident.

B.     Was Nanez's accident incident to his employment away from home?

To receive compensation for an injury that occurred during a period of commercial travel but during off hours, the employee must establish that the activity during the injury was a leisure activity "that an employer may reasonably expect to be incident to its requirement that an employee spend time away from home." (*IBM Corp., supra*, 77 Cal.App.3d at p. 283.) Not every activity qualifies. The activity must bear some relation to the purposes of the employment. (*LaTourette, supra*, 17 Cal.4th. at p. 653.) It must be an activity that is "reasonably necessary for the sustenance, comfort, and safety of the employee," such as procuring food and shelter. (*Id*. at p. 652.) If the injury in such an activity was the result of negligence, the injury is compensable if the negligence was "of a character which might be anticipated from the nature of the employment[.]" (*Western Pacific Ry. Co. v. Industrial Acc. Com.* (1924) 193 Cal. 413, 421.)

The "incident to" test is the test used to determine whether an injury arose out of employment. An injury arises out of employment if it occurs " 'by reason of a condition or incident of' " the employment. (*Maher v. Workers' Comp. Appeals Bd.* (1983) 33 Cal.3d 729, 733.) The employment and the injury "must be linked in some causal fashion." (*Id*. at p. 734.) This causal connection is met if the employment is a contributory cause of the injury. (*Ibid*.)

The test for determining whether an injury arises out of employment, and thus whether the commercial traveler's leisure activity was reasonably incident to the requirement the employee spend time away from home, is as follows: " ' "If the

particular act is reasonably contemplated by the employment, injuries received while performing it arise out of the employment, and are compensable. In determining whether a particular act is reasonably contemplated by the employment the nature of the act, the nature of the employment, the custom and usage of a particular employment, the terms of the contract of employment, and perhaps other factors should be considered. Any reasonable doubt as to whether the act is contemplated by the employment, in view of this state's policy of liberal construction in favor of the employee, should be resolved in favor of the employee." ' " (*LaTourette, supra*, 17 Cal.4th. at pp. 651-652.)

Another test for determining whether the activity can reasonably be expected to be incident to the employment away from home is by applying the foreseeability test used in respondeat superior law, as was done in the worker's compensation case of *Westbrooks v. Workers' Comp. Appeals Bd., supra*, 203 Cal.App.3d at page 254. Under that test, the factfinder, when determining whether a risk was inherent in or created by an enterprise, asks "whether the actual occurrence was a generally foreseeable consequence of the activity." (*Ibid*.) Unlike foreseeability as a test for negligence, foreseeability in the context of respondeat superior " 'merely means that in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business.' " (*Id*. at p. 255.)

In *Westbrooks*, the Court of Appeal ruled that injuries a bus driver suffered from his reckless driving of the bus were compensable under workers' compensation. It was not an usual or startling proposition that a bus driver would occasionally suffer a lapse in judgment and violate rules of the road. (*Westbrooks, supra*, 203 Cal.App.3d at p. 254; cf. *Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 299 [applying foreseeability test to determine hospital was not vicariously liable for ultrasound technician's sexual assault on patient].)

In this matter, the Board found that Nanez established by a preponderance of the evidence he was a commercial traveler and that he was injured during his off hours while traveling for comfort or leisure. The employer reasonably expected Nanez's activity to be incident to its requirement that Nanez spend time away from home because the employer authorized him to bring his car to the camp and did not instruct him to refrain from using it during off hours for personal reasons. The Board concluded that Nanez's traveling to obtain cellular service was within the scope of the commercial traveler rule because the travel was for his comfort or leisure and was not a distinct departure from his employment.

For its part, the employer does not specifically challenge the sufficiency of the evidence in support of the Board's findings that Nanez was pursuing an activity of personal comfort in seeking cellular service. Rather, the employer contends that any activity that involved leaving the camp without approval and for comfort and safety when the employer provided all items the employees would need was not a personal activity reasonably contemplated by the employer under the circumstances of this case.

There is an argument that no substantial evidence supports the Board's finding that Nanez was seeking cellular service when the accident occurred. Hearsay evidence established that Nanez did not have cellular service at the camp, but Todd's speculation in his unsworn and undated statement that Nanez left camp to find coverage does not qualify as substantial evidence. Speculation and surmise are not substantial evidence. No witness had actual knowledge of why Nanez left camp. And such evidence is not available. According to Nanez's answer, Nanez's mother stated outside the record that Nanez has no memory of the accident or of having worked for the employer. But because the employer does not challenge the Board's finding and instead contends that any departure from the camp without authorization was outside the course of employment, we will not disturb it.

20

Courts and the Board have applied the "incident to" standard liberally. In *Wiseman v. Industrial Acc. Com.* (1956) 46 Cal.2d 570, a California banker was in New York on a business trip. The employer paid his travel expenses and hotel room. The employee and a female companion who was not his spouse died from a fire in his hotel room in the early morning hours. The fire was caused by careless smoking by either one or both of them. (*Id.* at p. 572.)

The Commission contended that the commercial traveler rule did not apply because the employee was occupying the hotel room for "an immoral and unlawful purpose" under New York law. (*Wiseman, supra*, 46 Cal.2d at pp. 572-573.) The California Supreme Court ruled that the commercial traveler rule applied because the employee occupied the hotel room as a necessary incident of his employment, which required him to be away from home. (*Id.* at p. 573.) That the employee had a guest in his room while he was off duty did not detract from the fact he was there on his employer's business. Since the employee's fault was irrelevant if the requirements of the workers' compensation law were met, it was immaterial that his personal purpose in having a guest in his room was immoral and unlawful. (*Id.* at p. 573.)

Similarly, that the fire may have been caused by the companion's careless smoking did not render the injuries not compensable. If the injury occurs in the course of employment, the injury arises out of the employment unless the connection between the employment and the injury is so remote from the employment that it is not an incident of it. (*Wiseman, supra*, 46 Cal.2d at p. 573.) The court reasoned that an employee's entertaining guests in his hotel room who smoke, and injuries resulting from careless smoking by the employee or his guest while the employee was in the course of his employment were not so remotely connected with the employment that the injuries did not arise out of it. (*Id.* at pp. 573-574.)

*IBM Corp., supra*, 77 Cal.App.3d 279, concerned a California employee who was killed while out of town on business but during his personal time. The employee had

21

been in Chicago for a 10-day training. He had relatives in Kenosha, Wisconsin, about 60 miles away. His office manager and his supervisor encouraged him to visit his relatives while he was in Chicago. (*Id*. at p. 281.) The employer paid for transportation and lodging, and it paid a per diem for each day of the trip, including the weekend when the employee would not participate in training. On his return trip home from visiting his relatives, the employee was killed when the car he was riding in went off the road. (*Ibid*.)

The Court of Appeal ruled that the death was compensable. It explained, "IBM's requirement that Korpela [the employee] be present in Chicago on its business over a weekend when he was not required to work necessarily implies that Korpela would engage in some form of leisure time activity. The 60-mile trip from Chicago to Kenosha was not of such a duration or nature as to remove it from the category of the type of leisure time activity normally incident to an out-of-town temporary assignment. Korpela's short sojourn to visit relatives is certainly no more a departure from [w]hat an employer may reasonably expect to be incident to its requirement that an employee spend time away from home than was the banker's leisure time activity in *Wiseman*. The characterization of Korpela's trip as a normal incident of his temporary duty assignment is buttressed by the fact that his supervisor knew of the potential visit and encouraged it." (*IBM Corp., supra*, 77 Cal.App.3d at p. 283.)

By contrast, in *Fleetwood Enterprises, Inc. v. Workers' Comp. Appeals Bd., supra*, 134 Cal.App.4th 1316, the Court of Appeal ruled that an employee's injury from a car accident that occurred while he and his wife were sightseeing after the business portion of his trip had concluded was not compensable under the commercial traveler's rule. Although the employee, a design manager of recreational vehicles, casually looked at vehicle designs while he traveled with his wife, there was no evidence the employer expected or required the employee to do so. (*Id*. at p. 1325.) There was no evidence the employer expected or needed the employee to function as an employee during the

22

sightseeing portion of his trip or that the employer exercised any control over his route. (*Ibid.*)

The Board has also applied the commercial travel rule broadly in a number of panel decisions. In *Banegas v. Bayview Environmental Services* (2021) [2021 Cal.Wrk.Comp. P.D. LEXIS 54], the employee was a worker on the employer's project to remove asbestos from a high school in Santa Monica. The employee was one of the workers who resided in the Bay Area. (*Id.* at p. 3.) The employer made lodging available for its Bay Area-based employees without expecting the employees to stay in the lodging all seven nights of the week. The employees who lived in the Bay Area sometimes returned to the Bay Area for a weekend or a Sunday. The project supervisor testified that he had returned to the Bay Area five or six times during the project's duration. (*Id.* at p. 4.) The employee informed the employer he would be traveling to the Bay Area that day after a work stoppage. The supervisor advised him as a friend that he should not expend the energy to drive there because the work they were doing was so tiring. (*Id.* at p. 5.) On the drive to the Bay Area, the employee was involved in a vehicle accident and died from his injuries. (*Id.* at p. 2.)

The Board found that the employee's death was compensable under the commercial traveler rule. The employee's travel to the Bay Area during his time off was a practice which the employer expected of its employees. (*Banegas v. Bayview Environmental Services, supra,* 2021 Cal.Wrk.Comp. P.D. LEXIS, at p. 8.) Defendant's supervisor also knew of the employee's travel on the weekend of his death. The supervisor did not object to the employee's travel as a deviation from his employment, but merely cautioned him as a friend that the travel would be tiring. (*Ibid.*) "It follows that applicant sustained injury while engaged in an activity which defendant reasonably expected to be incident to its requirement that applicant spend time away from home on its Santa Monica project—and not while engaged in a distinct departure from his employment." (*Ibid.*)

23

Similarly, in *State Comp. Ins. Fund v. Workers' Comp. Appeals Bd.* (1996) 61 Cal.Comp.Cases 416 [1996 Cal.Wrk.Comp. LEXIS 3108], a California employee accepted an offer from his employer to work for six months in Elko, Nevada. He lived in Elko during the week, and he flew his personal airplane to his California residence on weekends. He was killed when his plane crashed on a return flight to Elko on his personal time. (*Id*. at p. 417.)

The Board concluded the death was compensable under the commercial traveler rule. A reasonable inference could be raised that the employer contemplated that its employees, away from their homes and with little to do in their leisure time, would return home whenever possible when they were off duty. The employer knew that the employee had his own airplane and that he flew home on weekends. (*State Comp. Ins. Fund, supra*, 61 Cal.Comp.Cases at p. 418.) There was also evidence that the employer may have encouraged the employee to use his airplane for company purposes. (*Ibid*.)

The Board determined an injury was compensable under the commercial traveler rule in *Tony's Food Service v. Workers' Comp. Appeals Bd.* (2012) 77 Cal.Comp.Cases 842 [2012 Cal.Wrk.Comp. LEXIS 111]. In that matter, a California employee was on a business trip in Hawaii when he was injured by diving headfirst into the swimming pool at the hotel the employer had provided. (*Id*. at p. 843.) The Board reasoned that utilizing the pool at the employer-provided hotel was an activity reasonably necessary for the employee's comfort while working away from home, and it was reasonable for the employer to expect that its employees would use the swimming pool at the hotel it provided. (*Id*. at p. 844.)

In contrast, the Board in *Norman v. Workers' Comp. Appeals Bd.* (1997) 62 Cal.Comp.Cases 87 [1997 Cal.Wrk.Comp. LEXIS 4192], held that the employee operated outside the commercial traveler rule when she extended her business trip over one night. The California employee had traveled to Las Vegas to participate in a convention for her employer. The employer provided money for food and paid for her

24

room accommodations. (*Id*. at pp. 87-88.) Although the employer arranged for transportation, the employee elected to travel in her own vehicle. The employee left Las Vegas on a Sunday afternoon after the convention had concluded. On her way home to Southern California, she encountered a traffic jam. She decided to return to Las Vegas for the night and leave early Monday morning. On Monday, she was injured in a car accident while traveling back to work. (*Id*. at p. 88.)

The Board found that the injuries were not compensable. The employee's election to drive her own vehicle was not authorized by the employer. To the extent the employee was within the commercial traveler rule, her utilization of an unauthorized means of transportation and her return to Las Vegas on Sunday constituted a substantial deviation or breach of employment which took her out of the course of her employment. She was not functioning in the course of her employment at the time of the accident. (*Norman, supra*, 62 Cal.Comp.Cases at p. 89.)

One commissioner dissented, stating the employee was a commercial traveler, and her decision to travel in her own vehicle and to return to Las Vegas and travel the next day was not a substantial deviation from the course of her employment. The employer had not prohibited the employee from using her own vehicle, and the delay of her return home was for safety reasons only. (*Norman, supra*, 62 Cal.Comp.Cases at pp. 89-90.)

Synthesizing these decisions and looking at the nature of Nanez's activity and his employment, we conclude substantial evidence supports the Board's decision. We disagree with the employer's argument that *any* departure from the camp without authorization was outside the course of employment. Substantial evidence establishes that the employer could reasonably expect that Nanez, incident to the employer's requirement that he spend time away from home, would leave camp in his personal automobile and drive "to town" during his off hours. The employer made clear to employees its "expectation" that employees not leave camp. It told employees it did not want them leaving camp "if they don't have to" due to safety reasons, and it "really

25

encouraged" the employees not to drive on the roads. But in none of these explanations did the employer actually prohibit the employees from leaving camp.

The evidence indicates the employer attempted to ensure that the employees had no reason to leave camp to acquire items they needed or wanted. It had also cautioned Nanez not to drive while tired, which he may have been due to his early and late working hours. Nonetheless, the evidence also indicates the employer reasonably expected that its employees could leave camp, its other expectations notwithstanding. That it wanted to limit any drives into town by employees "if possible" was a recognition that employees might drive into town. Consistent with that recognition, it instituted a policy that any employee needing to leave camp was expected to tell a manager in advance. The employer would also give that employee the shift prior to his departure off so the employee could get extra sleep before traveling.

No doubt, evidence of the employer's reasonable expectations is not as strong in this matter as it was in *IBM Corp.*, *Banegas*, and *State Comp. Ins. Fund*, discussed above. In each of those matters, the employer knew of and encouraged the employees' travels while they were commercial travelers. But such knowledge and encouragement are not a requisite to finding the employer reasonably expected the employee's activity as incident to requiring employment away from home under the unique circumstances of working at the remote camp.

We also recognize that the employer instructed the employees about its expectation that they not leave camp and its policies for if they had to leave, and that Nanez did not obtain authorization to leave the camp in violation of policy. However, a violation of those expectations does not per se preclude compensation. Even intentional or criminal misconduct that occurs within the course of one's employment and causes injury does not necessarily preclude recovering benefits. (*Westbrooks, supra*, 203 Cal.App.3d at p. 254.) "Any employer could argue that reckless, intentional, or criminal conduct is not part of any job description and therefore not within the scope of

26

employment. This argument, however, if permitted to succeed, would totally undermine the no-fault foundation of workers' compensation law." (*Ibid.*)

Here, the employer authorized Nanez to travel to Happy Camp in his personal vehicle. At the time, he was 19 years old. He was working two approximately five hour shifts seven days a week at a remote fire camp some 70 miles from Yreka, the closest city of substantive size. He had no cellular telephone service. And how he spent the six-to-seven hours of personal time between shifts was left to his discretion. Despite its expectations and efforts to the contrary, the employer did not expressly prohibit him from using his car while he was off work. Under these circumstances, it was reasonable for the employer to expect that Nanez would leave camp in his car during his off time as incident to being employed away from home, whether it was to obtain cellular service or even just to get away for a while to have a break from the camp for his leisure and comfort.

Viewed another way, Nanez's departure from camp in his personal vehicle was a generally foreseeable consequence of Nanez's employment away from his home. Under the circumstances of Nanez's age, his having his personal vehicle with him, the structure of his shifts, the remoteness of the camp, and his not being prohibited from using his vehicle during his off hours, his departure in his vehicle is not so unusual or startling that it would seem unfair to include the loss resulting from Nanez's injury among the other costs of the employer's business. (See *Westbrooks, supra*, 203 Cal.App.3d at p. 255.) And even if we have a reasonable doubt about that, we are required to resolve that doubt in favor of the employee. (*Department of Rehabilitation v. Workers' Comp. Appeals Bd., supra*, 30 Cal.4th at p. 1290.)

Substantial evidence thus supports the Board's determination that Nanez's departure from camp was a leisure activity that the employer may reasonably have expected to be incident to its requirement that Nanez spend time away from home.

27

IV

*Prohibited Activity*

The employer argues that a competing reasonable inference can be made that Nanez left camp to smoke marijuana, an activity that was prohibited at camp. The investigating officers reported smelling the odor of marijuana and saw what appeared to be ash inside the car. And Nanez's urine tested positive for THC the evening of the accident. Although the evidence may not support a defense of intoxication, an inference that Nanez left camp to smoke marijuana shows he committed a material deviation from his job duties and violated company policy.

Even if such an inference could be made, we may not annul a Board decision simply because the Board chose one of two competing inferences reasonably drawn from the evidence. (*State Employees' Retirement System v. Industrial Acc. Com.* (1950) 97 Cal.App.2d 380, 382.)

V

*New Evidence*

By motion, Nanez requested we admit additional evidence of which Nanez's counsel was unaware that purportedly refuted the employer's contention that Nanez's trip was without the knowledge or consent of his supervisor. Because we have denied the petition based on the evidence in the record, we deny the motion as moot.

28

DISPOSITION

The petition for writ of review is denied.  Respondents are awarded their costs on appeal.  (Cal. Rules of Court, rule 8.493.)

_____
HULL, Acting P. J.

We concur:



_____
MESIWALA, J.



_____
WISEMAN, J.*

_____

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

29

Filed 5/10/24

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| 3 STONEDEGGS, INC. et al., | C098711 |
| Petitioners, | (Super. Ct. No. ADJ14015513) |
| v. | |
| WORKERS' COMPENSATION APPEALS BOARD AND BRADEN NANEZ, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Respondents. | |

APPEAL from a judgment of the Workers' Compensation Appeals Board. Denied.

Hanna, Brophy, MacLean, McAleer & Jensen and Kelly J. Hamilton; Jones Mayer and Scott Davenport for Petitioners.

Department of Industrial Relations, Allison J. Fairchild for Respondent Workers' Compensation Appeals Board.

Law Offices of Larry S. Buckley and Robert L. Davis; Smith & Baltaxe and Bernhard D. Baltaxe for Respondent Braden Nanez.

THE COURT:

The opinion in the above-entitled matter filed on April 23, 2024, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

BY THE COURT:


_____
HULL, Acting P. J.


_____
MESIWALA, J.


_____
WISEMAN, J.*

_____

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

2